**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**David R. MANN, Defendant-Appellant.**

No. 86–3141.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 7, 1987.

Decided Oct. 5, 1987.

Sara Criscitelli, Washington, D.C., for plaintiff-appellee.

Robert J. McCrea, Eugene, Or., for defendant-appellant.

Before GOODWIN and FERGUSON, Circuit Judges, and STEPHENS,* District Judge.

FERGUSON, Circuit Judge:

Appellant/Defendant David R. Mann, after entering a conditional guilty plea, appeals from the district court's decision to deny his motion to suppress bank records obtained from his Cayman Islands bank account. The district court ruled that Mann had no protected interest in the bank records and that he had no standing to challenge the alleged violation of the international treaty that allowed access to those records. The district court also ordered sealed a number of the affidavits and exhibits produced by the government. We affirm the district court, since Mann had no protected privacy interest in the Cayman Islands records.[1]

I.

Appellant/Defendant David R. Mann, and his wife, Sandra Mann, were indicted on eight counts, including income tax evasion, filing of false income tax returns, and failure to disclose foreign financial interests. The charges arose in large part from records of funds deposited in Mann's account with Barclays Bank, Grand Cayman Island. Mann moved the district court to suppress the evidence obtained from Barclays Bank. The evidence had been obtained via a certificate of the Attorney General issued pursuant to an anti-drug trafficking treaty signed by the United States and the United Kingdom.[2] A letter agreement to the treaty provides that the Attorney General may certify a formal request to the Attorney General of the Cayman Islands for relevant documentary information when the United States has reason to believe that identified persons are involved in illegal narcotics.

Attorney General Meese issued a certificate for Mann's bank records on October 23, 1985. An internal Justice Department memorandum suggested a number of justifications for the certificate: (1) the IRS was unable to find a legitimate source for Mann's income; (2) Mann refused to identify the source of the income; (3) an informant identified Mann as the operator of a boat used by a convicted marijuana importer; and (4) the IRS had reason to believe that Mann maintained a bank account in the Cayman Islands.

The Barclays Bank records formed the basis for the indictment against Mann and his wife. Mann moved to suppress the evidence, arguing that the certificate was based upon false information and that the Bank's delivery of the records to the United States government was in violation of his privacy rights under Cayman law.

---

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation.

1. Mann moved to strike portions of the government's brief that refer to the sealed records. These portions of the brief were not provided to Mann. Since they are irrelevant to the decision in this case, we need not rule on the motion to

strike. *See Kirby v. Donovan,* 727 F.2d 869, 870 n. 1 (9th Cir.1984).

2. *See* Single Convention on Narcotic Drugs, March 30, 1961, art. 35–36, 18 U.S.T. 1407, T.I.A.S. No. 6298, 520 U.N.T.S. 204, *as amended by* Protocol Amending the Single Convention on Narcotic Drugs, March 25, 1972, 26 U.S.T. 1439, T.I.A.S. No. 8118.

Mann's factual challenge to the certificate was based upon his counsel's affidavit concerning the meeting with the government's allegedly secret informant. During this meeting, the informant apparently denied connecting Mann with drug smuggling, and denied testifying before a grand jury against Mann's alleged ringleader. Mann's legal attack challenged the certificate as a violation of a Cayman privilege of banking privacy.

In answer to Mann's challenge, the government argued that the Cayman privilege created no protected privacy interest. The government also argued that, even if a privacy interest existed, the records were properly obtained. In support of this contention, the government produced a variety of evidence in camera, portions of which the government requested be placed under seal. The government provided an affidavit from an IRS agent who was investigating the Manns for possible criminal tax violations. The agent's affidavit asserted that Mann had deposited funds in Barclays Bank from the sale of a house. After discovering the bank account, the agent learned from Rhode Island police of a possible link between Mann and drug smuggling. The informant purportedly identified Mann as "Dave the Marine," a previously unidentified captain of a drug smuggling ship. The district court ordered sealed a further portion of the affidavit and the transcript of the in camera conference.

The district court found that Mann lacked "standing" to contest the acquisition of the records. After this denial of defendant's motion to suppress, Mann entered a conditional guilty plea pursuant to Fed.R. Crim.P. 11(a)(2), and timely appealed.[3]

## II.

The district court's decision that Mann had no protected Fourth Amendment interest in his Cayman bank records is one of law, reviewed de novo. *See United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

In *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), an alleged bootlegger attempted to suppress copies of checks and other bank records obtained by allegedly invalid subpoenas duces tecum served upon his banks. The Fifth Circuit found that the defendant had the requisite Fourth Amendment interest to contest the validity, that the subpoenas were in fact invalid, and that suppression was the proper remedy. 500 F.2d 751, 756 (5th Cir.1974), *rev'd,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). The Supreme Court found it unnecessary to resolve the latter two issues, since "there was no intrusion into any area in which the respondent had a protected Fourth Amendment interest." 425 U.S. at 440, 96 S.Ct. at 1622. The ordinary rule to subpoenas is thus applied, and the Fourth Amendment " 'at the most guards against the abuse only by way of too much indefiniteness or breadth in the things required to be "particularly described," if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant.' " *Id.* at 445–46, 96 S.Ct. at 1625–26 (quoting *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946)).

Congress, in response to *Miller,* enacted the Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401–3422 (1982). The statutory rights granted by Congress, however, apply only to financial institutions within the United States. *See* 12 U.S.C. § 3401(1). The rule of *Miller,* then, is in full force with respect to foreign banks.

Mann argues that the rule of *Miller* was the impetus for maintaining an account in the Caymans, since Cayman law protects an individual's bank records from disclosure. Mann concludes that the Cayman restrictions on disclosure create a protected

---

**3.** Subsequent to the entry of judgment and the filing of the notice of the appeal, the government moved the district court to unseal one page of the transcript of the government's in camera colloquy with the court regarding the justification for obtaining the Cayman records. Since we find that Mann had no protected privacy interest in those records, we need not reach the questions regarding unsealing the transcript.

Fourth Amendment privacy interest that allows him to challenge the propriety of the Attorney General's request for the records. Mann's argument, curiously unadorned by citation, has been considered and rejected by the Supreme Court. In *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), the criminal defendant asserted that "the Bahamian law of bank secrecy creates an expectation of privacy not present in *United States v. Miller*." *Id.* at 732 n. 4, 100 S.Ct. at 2444 n. 4. The Bahamian law prevented the disclosure of a banking customer's affairs, but was subject to a number of exceptions. The Court concluded that

> [t]he statute is hardly a blanket guarantee of privacy. Its application is limited; it is hedged with exceptions; and we have been directed to no authority construing its terms. Moreover, American depositors know that their own country requires them to report relationships with foreign financial institutions. We conclude that [the defendant] lacked a reasonable expectation of privacy in the [Bahamian bank] records that documented his account.

*Id.* (citations omitted) The Court has thus ruled that foreign privacy statutes do not normally create a greater expectation of privacy than that discussed in *Miller.*

The Cayman Islands statute is directly analogous to the Bahamian statute in *Payner*. It provides for a general privilege against the disclosure of bank records, but it is subject to a vast array of exceptions. Mann argues that none of these exceptions apply to the Attorney General's request for documents. Mann's argument, however, missed the import of the Court's discussion in *Payner*. The existence of exceptions to foreign privacy statutes indicates that a bank customer does not have a reasonable expectation of privacy, since the customer knows that his records may be revealed in a variety of situations. That the treaty is not one of the exceptions enumerated in the Cayman privacy statutes is thus irrelevant, and the defendant's claim of a Fourth Amendment violation fails.

Mann does not appear to argue that the Attorney General's certification fails to meet the limited requirements imposed by *Miller*. The materials specified were limited in description, the Attorney General is authorized by the letter agreement to make the request for documents, and the materials clearly were relevant to the investigation.

Mann thus does not have a protected Fourth Amendment interest in his Cayman records, and may not challenge the Attorney General's certificate issued to obtain those records. Mann's motion to suppress was thus properly denied.

### III.

The district court does not appear to have differentiated the analysis whether Mann had a protected Fourth Amendment interest from the analysis whether Mann has standing to assert a violation of the treaty itself. Nevertheless, the analyses are distinct. In one, the court must determine whether Mann had a protected privacy interest in his Cayman Islands bank records. In the other, the court must determine whether the United States/United Kingdom treaty creates a right in Mann to challenge the Attorney General's certification under the treaty.

■ A treaty may create standing if it indicates the intention to "establish direct, affirmative, and judicially enforceable rights." *People of Saipan v. United States Dep't of Interior*, 502 F.2d 90, 96–97 (9th Cir.1974), *cert. denied*, 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761 (1975); *see also Diggs v. Richardson*, 555 F.2d 848, 851 (D.C.Cir.1976). Without such intent, only the foreign sovereign has the right to protest. *See United States v. Reed*, 639 F.2d 896, 902 (2d Cir.1981) (existence of Bahamian extradition treaty created no additional rights in defendant when defendant was arrested in the Bahamas pursuant to valid arrest warrant but in violation of the treaty).

■ The treaty and letter agreement do not appear to create any individual right in Mann. The letter agreement merely recog-

nizes the ability of signatory states to request records from financial institutions in other signatory states. Those records are available for offenses "connected with, arising from, related to, or resulting from any narcotics activity." The agreement contemplates that the party supplying the records will not notify any third parties (e.g., depositors) for at least ninety days from the issuance of the certificate request. The treaty also expresses its intent to "provide that the Cayman laws protecting confidential relationships should not protect narcotics traffickers."

Mann has not indicated any portion of the treaty that might grant him a right to challenge the authenticity of the Attorney General's certification. The treaty appears only to regulate the interchange of requests for bank records among signatory states. This ground for suppression thus fails.

## IV.

■ Mann also argues that the district court erred in sealing certain materials. The district court has the inherent power to seal affidavits filed with the court in appropriate circumstances. *Office of Lakeside Non-Ferrous Metals v. United States*, 679 F.2d 778, 779 (9th Cir.1982); *In re Sealed Affidavit(s) to Search Warrants*, 600 F.2d 1256, 1257 (9th Cir.1979) (per curiam). The district court's decision to seal the affidavits and the transcript of the in camera conference discussing them is thus reviewed for abuse of discretion. *Cf. Valley Broadcasting Co. v. United States District Court*, 798 F.2d 1289, 1294 (9th Cir. 1986) (district court's denial of media access to records reviewed for abuse of discretion). The government contends that the materials should be sealed to protect the informant and to keep confidential ongoing investigations. We find that, on this basis, the district court did not abuse its discretion. Since we find the sealed materials irrelevant to our determination of this case, we do not reach the question of the

propriety of their use to justify the Attorney General's certificate.

## CONCLUSION

Mann had no protected Fourth Amendment interest in his Cayman bank records. The district court was thus correct in dismissing Mann's motion to suppress. We thus need not reach the questions of the propriety of the Attorney General's certificate or the appropriateness of suppression as a remedy.

AFFIRMED.