**In re GRAND JURY PROCEEDINGS, YANAGIHARA GRAND JURY, IMPANELLED JUNE 13, 1988.**

**Misc. No. 22638.**

United States District Court, C.D. California.

March 24, 1989.

Mark A. Byrne, Asst. U.S. Atty., Robert C. Bonner, U.S. Atty., Los Angeles, Cal., for petitioner.

Donald M. Re, Los Angeles, Cal., for respondent.

## MEMORANDUM ORDER COMPELLING RESPONDENT AHMAD SHAMS TO SIGN CONSENT DIRECTIVE

REA, District Judge.

This matter comes before the court on the government's motion to compel a grand jury witness to sign a consent directive granting access to foreign bank records. For the following reasons, the motion is granted and the witness is ordered to sign the directive.

### I. BACKGROUND

On May 13, 1988, Ahmad Shams was subpoenaed to appear before a federal grand jury and produce records relating to Swiss bank accounts suspected to be under his control. The records are sought in connection with possible violations of United States tax laws. Mr. Shams denied having any documents responsive to the subpoena. On November 3, 1988, respondent was brought before the grand jury and asked to sign a form of consent directing officials of any foreign bank where he maintains an account to disclose records of such accounts to the government. Mr. Shams refused to sign the directive at the hearing. The government now moves this court to order Mr. Shams to sign the consent directive and, should he refuse to comply, to hold him in civil contempt.

Respondent counters with three arguments. First, he challenges the court's authority to order a grand jury witness to sign such a consent. Next, he attacks the form of the document, arguing that it misleadingly suggests that his consent is voluntary. Finally, he urges the court to decline to order him to sign the directive in the interests of international comity, since it may call for violations of the bank secrecy laws of a sovereign nation.

### II. THE COURT'S AUTHORITY TO COMPEL SIGNATURE OF THE CONSENT FORM

According to respondent, ordering an individual to "consent" to the release by third parties of his records "shocks the conscience." The Supreme Court, however, recently upheld the use of this very procedure. *Doe v. United States*, 487 U.S. ——, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988). In so doing, the Court stressed that the contents of foreign bank records, as well as the act of producing such records, are not privileged under the Fifth Amendment. *Id.*, 487 U.S. at ——, 108 S.Ct. at 2345, 101 L.Ed.2d at 194; *Braswell v. United States*, 487 U.S. ——, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

■ The court further notes that a court order compelling signature of the directive is, in practical effect, not unlike a subpoena to produce records. It is well-established that a showing of probable cause is not necessary for the issuance of a grand jury subpoena to testify. *Blair v. United States*, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919), *Carter v. United States*, 417 F.2d 384 (9th Cir.1969).

The government's request is therefore proper. Mr. Shams is a grand jury witness who refuses to voluntarily produce bank records that might be under his control. The government's *in camera* submission to the court indicates that respondent has access to Swiss bank records that would corroborate government allegations of federal tax law violations by one or more individuals. The court is satisfied that its action in ordering Mr. Shams to direct the release of such records is supported by strong legal authority.

■ Respondent correctly notes that the *Doe* majority expressly declined to address the issue of a district court's authority to entertain a motion of this nature, since the appellate court's conclusion in that regard was unchallenged, *Id.*, 487 U.S. at ——, 108 S.Ct. at 2345 n. 3, 101 L.Ed.2d at 194 n. 3. In *Doe*, the Fifth Circuit concluded that the All Writs Act, 28 U.S.C. § 1651(a) (1982), afforded the district court authority to

compel execution of the consent form.[1] Mr. Shams points out that the All Writs Act is not an independent source of jurisdiction, but merely permits a court to effectuate those powers properly conferred upon it through the Constitution.

The court agrees that jurisdiction may not rest on the All Writs Act alone. Exercise of this court's jurisdiction is nonetheless permissible under 28 U.S.C. § 1826 (1982).[2] Through this statute, Congress authorized courts to compel a recalcitrant witness to testify in front of a grand jury and to provide necessary documents. The order in this case is intended to produce just that result. As noted earlier, inasmuch as the contents of the bank records and the act of production are nontestimonial and therefore unprivileged, the nature of the order sought in this case is authorized under 28 U.S.C. § 1826. *In re Weir*, 377 F.Supp. 919 (S.D.Cal.1974), *aff'd*, 495 F.2d 879 (9th Cir.1974), *cert. denied*, 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974); *Matter of Fred R. Witte Center Glass No. 3*, 544 F.2d 1026 (9th Cir.1976). The court therefore does not lack jurisdiction to enter an order of the type requested by the government.[3]

### III. FORM OF DISCLOSURE STATEMENT

■ Mr. Shams next contends that the government's motion must be denied on the basis that the consent directive fails to disclose that it is being signed pursuant to a court order and hence is misleading.

In *Doe*, the Court held that because the directive expressly indicated the circumstances under which the signor's consent was obtained, namely that it was "executed pursuant to that certain order of the United States District Court," its compelled execution shed no light on Doe's intent or state of mind and was nontestimonial. *Id.*, 487 U.S. at ——, 108 S.Ct. at 2351, 101 L.Ed.2d at 201. The Court took care to distinguish the form of the consent used in *In re Grand Jury Proceedings*, 814 F.2d 791 (1st Cir.1987), which suggested that the witness had freely consented to signing the form.

In this case, the government did not include the "executed pursuant to court order" language in the directive presented to respondent at the grand jury hearing. Had Mr. Shams willingly signed the form, of course, such language would not have been necessary. He now refuses to sign the form, however, and the court is mindful that a disclosure request signed under threat of contempt may not be deemed "voluntary" for purposes of foreign bank secrecy laws. Recognizing the changed state of affairs, the government has since amended the form to reflect the fact that respondent's "consent" is being obtained under court order. The court is satisfied that the revised directive creates no false impression, is consistent with *Doe*, and will enable foreign banking institutions to independently ascertain the voluntariness of the consent.[4]

---

1. The All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usage and principles of law." 28 U.S.C. § 1651(a) (1982).

2. In pertinent part, 28 U.S.C. § 1826(a) (1982) states: "Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court *to testify or provide other information*, including any book, paper, document, record, recording or other material, the court upon such refusal ... may summarily order his confinement." (Emphasis added).

3. Since respondent has not yet refused to comply with the order of this court before the grand jury, the court need not address the issue of contempt. The court's authority to use this mechanism to enforce its orders in this context is quite clear. 28 U.S.C. § 1826(a) (1982); *In re Grand Jury Proceedings*, 662 F.2d 532 (9th Cir. 1981).

4. Inasmuch as the directive is intended for use in foreign countries, for ease of translation the court has redacted as much "legalese" as possible and offers this alternative form for Mr. Shams to sign:

> I, AHMAD SHAMS, a resident of the State of California in the United States of America, do hereby direct any bank or trust company at which I may have a bank account of any kind or at which a corporation has a bank account of any kind upon which I am authorized to draw, and its officers, employees and

## IV. CONSIDERATIONS OF COMITY

■ Respondent's final challenge to the government's motion rests on principles of international comity. In short, he argues that the document he would be compelled to sign directs foreign nationals to violate the laws of their own country, contrary to the deference which comity dictates should be afforded such laws. Mr. Shams therefore urges the court to decline to engage in such interference.

In *Doe,* the Supreme Court stated:

The effectiveness of the directive under foreign law has no bearing on the constitutional issue in this case. Nevertheless, we are not unaware of the international comity questions implicated by the Government's attempts to overcome protections afforded by the laws of another nation. We are not called upon to address those questions here.

*Doe* 487 U.S. at ——, 108 S.Ct. at 2352 n. 16, 101 L.Ed.2d at 202 n. 16. According to the government, this language indicates that the Supreme Court found it unnecessary to address the comity issue in the context of a consent directive, or alternatively that Mr. Shams lacks standing to raise the comity issue since he is not one of those who might be compelled to violate the laws of a sovereign state.

"Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 440 (3d Cir.1971), *cert. denied,* 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972). It is "an essentially voluntary deference to the acts of other governments, undertaken for the common good even though no transnational institution exists to exert any compulsion." 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4473 (1981). In this court's opinion, the government's formal standing arguments carry less weight than the court's continuing duty to ensure that its orders which have extra-territorial repercussions do not unduly infringe on the sovereignty of foreign states.

Regardless of standing, the court is satisfied that the subject order does not violate accepted notions of international comity. In evaluating this issue, courts have employed a balancing test derived from section 40 of the *Restatement (Second) of the Foreign Relations Laws of the United States* (1965).[5] Section 40 of the Restatement provides:

Where two states have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each state is required by international law to consider, in good faith, moderating the exercise of its enforcement jurisdiction in light of such factors as

(a) vital national interest of each of the states,

(b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person,

(c) the extent to which the required conduct is to take place in the territory of the other state,

(d) the nationality of the person, and

---

agents, to disclose all information and deliver copies of all documents of every nature in your possession or control which relates to said bank account(s), and to give evidence relevant thereto, to the Yanagihara Grand Jury, impanelled June 13, 1988, and sitting in the Central District of California, or to any Assistant United States Attorney for the Central District of California, or to any attorney of the United States Department of Justice assisting said Grand Jury in its investigation. This direction shall be construed to grant irrevocable authority for so doing.

I execute this direction by order of the United States District Court for the Central District of California, which order issued in connection with the aforesaid investigation, and is dated ——.

This direction is intended to apply to any law concerning any obligation of confidentiality of the Swiss Confederation, and to any implied contract of confidentiality which may be imposed by Swiss common law, and shall be construed as consent with respect to such laws as applied to any bank account(s) for which I may be a relevant principal.

5. *See, e.g., United States v. Vetco, Inc.,* 691 F.2d 1281 (9th Cir.1981), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981); *United States v. Rubin,* 836 F.2d 1096 (8th Cir.1988); *United States v. Davis,* 767 F.2d 1025 (2d Cir. 1985).

(e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rules prescribed by that state.[6]

The court has examined each of these factors and finds no comity problem is presented. Most importantly, "one who relies on foreign law assumes the burden of showing that such law prevents compliance with the court's order." *In re Sealed Cases*, 825 F.2d 494, 498 (D.C.Cir.1987). In the instant case, Mr. Shams has made no showing that a consent to disclose bank records, signed pursuant to a court order, is inconsistent with any Swiss law. He has further failed to detail the nature of any civil or criminal penalty or any enforcement action that Switzerland might undertake to prevent its citizens from complying with such a disclosure request. To the contrary, the consent is framed so as to permit the foreign authorities to render their own judgment on its validity, and carries with it no threat of inconsistent enforcement actions against Mr. Shams or any foreign bank employees. Therefore, the record before the court indicates that no vital national interest of a sovereign country would be compromised by the subject order, and no individual would be subject to any hardship.

## V. CONCLUSION

For all the reasons set forth above,

IT IS HEREBY ORDERED that Mr. Shams appear before the grand jury to sign the consent directive.

---

**6.** Section 40 of the *Restatement (Second)* has since been revised and is now encompassed within section 403 of the *Restatement (Third) of the Foreign Relations Law of the United States* (1986). The revisions are immaterial to the issue before the court, and thus do not alter the comity analysis.