**In re GRAND JURY PROCEEDINGS.**

**Reinhold MARSONER,
Witness–Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 94–15781.

United States Court of Appeals,
Ninth Circuit.

Submitted June 1, 1994.

Order June 3, 1994.

Opinion Nov. 7, 1994.

Stephen E. Silver, Stephen M. Hart, Burch & Cracchiolo, Phoenix, AZ, for witness-appellant.

Georgia B. Ellexson, Chief, Appellate Section, Stephen G. Winerip, Asst. U.S. Atty., Phoenix, AZ, for appellee.

Before: TANG, PREGERSON, and T.G. NELSON, Circuit Judges.

PER CURIAM:

## I.

### Overview

Reinhold Marsoner appeals the district court's order finding him in contempt for refusing to sign a consent directive as ordered by the district court. The appeal was expedited pursuant to 28 U.S.C. § 1826(b). On June 3, 1994, we entered an order affirming the district court order, with Judge Pregerson indicating his dissent. Our order stated that opinions would follow. We now deliver them.

## II.

### Facts and Procedural History

Marsoner, an Austrian citizen residing in the United States, is the target of an investigation by a federal grand jury, which is investigating possible violations of United States laws stemming from claimed tax liabilities for the years 1989 through 1991. Marsoner was subpoenaed to appear before the grand jury to sign a disclosure directive. The disclosure directive states that Marsoner authorizes and directs any bank at which Marsoner had a bank or loan account for which Marsoner was, is, or may be the relevant principal, signatory, or beneficiary to disclose all information and produce all documents in its possession to the grand jury or

to an attorney or agent of the United States Attorney. The directive also authorizes any bank employee, officer, or agent of such bank to provide testimony or evidence in connection with any proceeding arising out of the disclosure of the bank information or documents. The directive states that it has been executed pursuant to a United States district court order and that it is intended to be construed as consent to disclosure under Austrian law for any bank account for which Marsoner is the relevant principal.

Marsoner appeared before the grand jury and refused to sign the disclosure directive, claiming it violated his rights under the Fourth and Fifth Amendments of the United States Constitution and under the laws of Austria. The government filed a motion to compel Marsoner to sign the disclosure directive, which the district court granted on January 31, 1994. Marsoner requested reconsideration, filed a response in opposition to the government's motion to compel, and filed a motion for an evidentiary hearing on the implications of Austrian law. In support, Marsoner furnished affidavits of two individuals whom he presented as authorities on Austrian law. The government filed a reply and a supplemental reply.

The district court held a hearing on the motion to compel. The district court granted the government's motion to compel and denied Marsoner's request for an evidentiary hearing as unnecessary. The district court ordered Marsoner to sign the disclosure directive by April 8, 1994.

On April 11, 1994, Marsoner appeared before the grand jury and refused to sign the directive, again on the grounds that it violated his rights under the Fourth and Fifth Amendments and under the laws of Austria. On April 12, 1994, the government filed a petition for an order to show cause why Marsoner should not be held in contempt for refusing to sign the disclosure directive. Following a hearing, the district court held Marsoner in civil contempt under 28 U.S.C. § 1826(a). The district court imposed a $100.00 fine and ordered Marsoner confined until either he purged his contempt or the grand jury's term expired. This appeal follows.

## III.

### Standard of Review

We review the district court's finding of contempt under 28 U.S.C. § 1826 for an abuse of discretion. *In re Grand Jury Proceedings (Doe)*, 801 F.2d 1164, 1167 (9th Cir. 1986) (per curiam).

## IV.

### Discussion

**A. Fifth Amendment Claim**

Marsoner contends that the district court order compelling him to sign the disclosure directive violates his rights under the Fifth Amendment. We disagree.

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S.C.A. Const. Amend. 5. This protection applies only when the testimony furnished would incriminate the witness. *See Doe v. United States*, 487 U.S. 201, 207, 108 S.Ct. 2341, 2345–46, 101 L.Ed.2d 184 (1988) (citing *Fisher v. United States*, 425 U.S. 391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976)). The protection also applies only to a communication that is of a "testimonial or communicative nature." *Id.* 487 U.S. at 210, 108 S.Ct. at 2347 (citing *Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830–31, 16 L.Ed.2d 908 (1966)).

In *Doe*, the Supreme Court determined that a consent directive similar to the one the district court ordered Marsoner to sign was not testimonial and, therefore, that the district court order compelling the petitioner to sign the consent directive did not violate the petitioner's Fifth Amendment rights. 487 U.S. at 219, 108 S.Ct. at 2352. The Supreme Court noted that the consent directive did not refer to a specific account, identify the relevant bank, or require the petitioner to acknowledge the existence of a foreign bank account or to admit the authenticity of any documents. *Id.* at 215–16, 108 S.Ct. at 2350–51. The Court further noted that the consent directive did not shed light on the petitioner's state of mind with respect to the

issue of petitioner's consent. *Id.* at 216, 108 S.Ct. at 2350–51. The Court found that execution of the consent directive was analogous to providing a handwriting sample or voice exemplar, neither of which is a testimonial act. *Id.* at 217, 108 S.Ct. at 2351. The Court observed that when the consent directive is forwarded to the relevant banks, the only factual statement that will be made will be the bank's "implicit declaration, by its act of production in response to the subpoena, that *it* believes the accounts to be petitioner's." *Id.* at 218, 108 S.Ct. at 2352 (emphasis in original). *See also In re Grand Jury Proceedings (United States v. Cid–Molina)*, 767 F.2d 1131, 1132 (5th Cir.1985).

The disclosure directive presented to Marsoner, like the one examined in *Doe*, does not identify any specific accounts, identify any relevant banks, attest to the authenticity of any documents, or acknowledge the existence of any bank accounts. It does not imply that Marsoner has consented to the execution of the directive, shed light on Marsoner's state of mind, or involve any assertion of fact. Accordingly, we find that Marsoner's execution of the disclosure directive is not testimonial and, therefore, does not implicate his rights under the Fifth Amendment. *See Doe*, 487 U.S. at 219, 108 S.Ct. at 2352.

Moreover, where a bank voluntarily prepares records, production of the records does not involve "compelled" testimonial evidence because there is no compulsion. *Fisher*, 425 U.S. at 409–10, 96 S.Ct. at 1580–81. Because the disclosure directive instructs banks to produce documents that have already been prepared, there is no compulsion and no Fifth Amendment implication. *See id.*

Marsoner attempts to distinguish his case from *Doe* on the ground that the government "claims specific knowledge of Marsoner's foreign bank accounts and has stated that it is prepared to indict Marsoner." Marsoner, citing *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951), argues that because his consent would provide the final link in the chain of evidence, the consent form is incriminating and cannot be countenanced under the Fifth Amendment.

Marsoner's attempt to distinguish *Doe* is unsuccessful, and his reliance on *Hoffman* is misplaced. The disclosure directive's incriminating feature is but one of the two requirements for a successful claim under the Fifth Amendment. *See Doe* 487 U.S. at 207, 108 S.Ct. at 2345–46. In order to constitute a violation under the Fifth Amendment, the compelled communication must be testimonial or communicative. *See id.* Because Marsoner's signature on the disclosure directive is not testimonial or communicative, its potentially incriminating repercussions are of no consequence. *See id. See also In re Grand Jury Proceedings (Cid–Molina)*, 767 F.2d at 1132 & n. 1 (rejecting a Fifth Amendment challenge to a district court order compelling an individual to comply with a grand jury subpoena by executing a consent directive that specifically identified two banks which were to disclose information). *Cf. Hoffman*, 341 U.S. at 486, 71 S.Ct. at 818.

**B. Fourth Amendment Claim**

Marsoner next contends that the district court order compelling him to sign the disclosure directive violates his expectations of privacy under the Fourth Amendment. We disagree.

■ We review de novo the district court's decision that a witness does not have a protected Fourth Amendment interest in his foreign bank records. *See United States v. Mann*, 829 F.2d 849, 851 (9th Cir.1987).

■ The Fourth Amendment protects against intrusions into an individual's "zone of privacy." *United States v. Miller*, 425 U.S. 435, 440, 96 S.Ct. 1619, 1623, 48 L.Ed.2d 71 (1976) (citing *Hoffa v. United States*, 385 U.S. 293, 301–02, 87 S.Ct. 408, 413–14, 17 L.Ed.2d 374 (1966)). In general, an American depositor has no reasonable expectation of privacy in copies of his or her bank records, such as checks, deposit slips, and financial statements maintained by the bank. *Id.* 425 U.S. at 442, 96 S.Ct. at 1623–24. A "depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." *Id.* at 443, 96 S.Ct. at 1624. Where an individual's Fourth Amendment rights are not implicated, obtaining the documents does

not violate his or her rights, even if the documents lead to indictment. *See id.* at 445, 96 S.Ct. at 1625.

The Supreme Court has extended this analysis to the privacy expectations of an individual depositing funds in a foreign bank. In *United States v. Payner,* 447 U.S. 727, 732 n. 4, 100 S.Ct. 2439, 2444 n. 4, 65 L.Ed.2d 468 (1980), the Court rejected the claim that the Bahamian law of bank secrecy created an expectation of privacy. The Court found that the applicable foreign law of bank secrecy "is hardly a blanket guarantee of privacy. Its application is limited; it is hedged with exceptions; and we have been directed to no authority construing its terms. Moreover, American depositors know that their own country requires them to report relationships with foreign financial institutions." *Id.* On that ground, the Court concluded the respondent had no expectation of privacy in Bahamian bank records that document his account. *Id.*

We reached a similar conclusion in *Mann,* where we rejected a depositor's claim that Cayman law's restrictions on disclosure of information concerning Cayman bank records created a reasonable expectation of privacy protected by the Fourth Amendment. 829 F.2d at 851–52. We found that Cayman law contained a general privilege against disclosure of bank records but contained a "vast array of exceptions." *Id.* at 852. We found Cayman law analogous to the Bahamian law reviewed in *Payner* and ruled there was no Fourth Amendment violation. *Id.*[1]

Marsoner correctly asserts that the district court erred by failing to consider the role of Austrian law in its evaluation of Marsoner's Fourth Amendment claim. *See id.* at 851–52. Nevertheless, because we conduct a de novo review, we may consider the impact of Austrian law on Marsoner's expectations of privacy.

Austrian law provides that, generally, banks, and bank officers, employees and personnel may not disclose or use confidential information obtained on the basis of the bank's relationship with a client. Bundes-

gesetz uber das Kreditwesen vom 24. Janner 1979 (Kreditwesengesetz), *Bundesgesetzblatt,* No. 63/1979 (hereinafter "1979 Banking Statute" or "banking statute") § 23(1). There is no obligation to maintain confidentiality in several situations, including cases in which the client provides express written consent to disclosure of the banking secret, in connection with inheritance proceedings or criminal court proceedings in Austrian courts, or cases involving general information about the economic circumstances of an entrepreneur. *Id.* at § 23(2). Under the banking statute, individuals disclosing or using banking secrets protected under section 23 may be punished only if they disclose or use the secrets to obtain financial advantage for either themselves or others or to cause detriment to another. *Id.* at § 34(1). Thus, although the statute generally protects banking secrets, it is not a "blanket guarantee."

We find considerations of United States law dilute Marsoner's expectation of privacy. United States citizens and residents are required to reveal the existence of foreign bank accounts and to report transactions made with a foreign financial agency. 31 U.S.C. § 5314(a). This information is to be reported to the Commissioner of Internal Revenue for each year in which such relationship or transactions occur. 31 C.F.R. § 103.24 (1984). Thus, Marsoner, as a resident, had an expectation that any transactions with Austrian banks would have to be disclosed. *See Payner,* 447 U.S. at 732 n. 4, 100 S.Ct. at 2444 n. 4.

Marsoner distinguishes his case from *Payner* and *Mann* on the ground that he is an Austrian citizen asserting his rights under Austrian law. He points out that *Payner* and *Mann,* which rejected Fourth Amendment challenges to orders directing disclosure of foreign bank records, involved United States citizens asserting privacy interests under foreign law. We find this distinction inapposite. First, neither our reading of the section 23 of the 1979 Banking Statute nor the affidavits furnished by Marsoner suggest that the bank's duty under section 23 to maintain confidentiality applies only to ac-

---

1. We observed that, generally, foreign laws governing privacy of bank matters do not create an expectation of privacy beyond that discussed in *Miller. Mann,* 829 F.2d at 852.

counts maintained by Austrian citizens. Second, and more importantly, the United States law requiring disclosure of foreign accounts applies to United States citizens and residents alike. *See* 31 U.S.C. § 5314. Thus, because he is a United States resident, Marsoner's status as an Austrian citizen does not relieve him of the obligation to report transactions with foreign financial agencies. Because we find that Marsoner's expectation of privacy in his Austrian bank records is diluted, we conclude that the district court order does not violate Marsoner's Fourth Amendment rights.

C. International Comity

 Marsoner's final contention is that the district court's order violates his rights under Austrian law. He argues that the district court erred by failing to conduct an evidentiary hearing on the implications of Austrian law and asks us to remand for an evidentiary hearing. The government counters that remand and an evidentiary hearing are unnecessary because this court is in a position to analyze the implications of Austrian law. We find the government's position more persuasive.

The issue before us is not solely whether the district court order compelling Marsoner to sign the disclosure directive before the grand jury violates Austrian law. Rather, the issue is whether, if the district court's order violates Austrian law, principles of international comity prevent the district court from enforcing its order.[2]

 A party relying on foreign law to contend that a district court's order violates principles of international comity bears the burden of demonstrating that the foreign law bars compliance with the order. *In re Grand Jury Proceedings (Shams),* 873 F.2d 238, 239–40 (9th Cir.1989) (citing *United States v. Vetco Inc.,* 691 F.2d 1281, 1289 (9th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981)). If the party

fails to produce evidence in support, then he fails to meet his burden on the comity issue, and the district court need not consider it. *Id.* at 240.

Marsoner proffered to the district court lengthy affidavits from two individuals with strong credentials in the area of international law and Austrian banking law, who presented their analysis of relevant Austrian law. Thus, we find, at a minimum, Marsoner met his burden of producing evidence sufficient for the court to consider the implications of Austrian law. *See id.* at 239–40. Accordingly, the district court erred by failing to consider the implications of Austrian law.

Nevertheless, a determination of foreign law is a ruling on a question of law, which an appellate court is free to determine based on its own analysis. *See United States v. First Nat'l Bank of Chicago,* 699 F.2d 341, 344 (7th Cir.1983). We find that the record is sufficiently developed and that remand is unnecessary to a determination of whether the order compelling Marsoner to sign the disclosure directive violated Marsoner's rights under Austrian law and whether considerations of international comity prevent its enforcement. *See id.*

Under the Federal Rules of Civil Procedure, "[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law." Fed.R.Civ.P. 44.1. "An expert witness [testifying about foreign law] is not required to meet any special qualifications. Indeed he need not even be admitted to practice in the country whose law is in issue." 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2444 at 406 (1971).

In the affidavits proffered by Marsoner, both affiants opine that compelling Marsoner to sign the consent directive would violate Austrian law. We need not evaluate the

---

2. We note that this case does not involve Austrian bank officials or employees found in contempt for resisting a request or order for production of bank records. *Cf. In re Sealed Case,* 825 F.2d 494, 498 (D.C.Cir.), *cert. denied,* 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 391 (1987). Accordingly, we focus only on the legality of compelling an Austrian citizen, residing in the United States, to sign a consent to the disclosure of bank records, which may or may not include records maintained in connection with Austrian bank accounts.

accuracy of these opinions. We find that even if the district court order compelling Marsoner to sign the disclosure directive implicates Marsoner's rights under Austrian law, international comity will not preclude its enforcement.

We acknowledge that "in recent years litigants have often attempted to circumvent [the limitations of international comity] by seeking an order compelling the record-owner to consent to the disclosure of the records." *United States v. Davis*, 767 F.2d 1025, 1034 (2d Cir.1985). In considering international comity, we balance the competing interests of Austria and the United States and the extent to which they are affected by the order compelling Marsoner's signature to determine whether the purported illegality of the order under Austrian law precludes its enforcement. *See id.* at 1034–35; *Vetco*, 691 F.2d at 1288. We decide this based on the particulars involved. *Vetco*, 691 F.2d at 1288.

In the past, courts have used section 40 of the Restatement (Second) of Foreign Relations Law (1965) to evaluate whether international comity precludes enforcement of an order compelling a witness to sign a consent authorizing disclosure of foreign bank records. *See, e.g., Davis*, 767 F.2d 1025; *Vetco*, 691 F.2d 1281. Section 40 of the Restatement has been revised and is now encompassed within section 403 of the Restatement

(Third).[3] Under the revised Restatement, reasonableness is "an essential element in determining whether, as a matter of international law, the state may exercise jurisdiction to prescribe." Restatement (Third) of Foreign Relations Law § 403 reporter's note 10 (1987).

Applying these factors to the situation presented here, we hold that international comity does not preclude enforcement of the district court's order. Marsoner is suspected of using his Austrian bank accounts to evade taxes in the United States. The grand jury seeks Austrian bank information in an effort to link Marsoner to alleged illegal activities that occurred in the United States between 1989 and 1991. Although Marsoner is an Austrian citizen, he a United States resident and his economic activity, which includes tax liabilities, involves the United States.

The United States has a strong interest in collecting taxes, *see Vetco*, 691 F.2d at 1289, and in prosecuting individuals for tax evasion, *see Davis*, 767 F.2d at 1035. Additionally, while Austria has enacted a statute to maintain the secrecy of bank records, it has created exceptions to the secrecy provisions. *See* 1979 Banking Statute § 23(2).

Although under the 1979 Banking Statute, Marsoner may have expected that his Austrian bank records would remain confidential, the statute does not provide a blanket guar-

---

**3.** Section 403 of Restatement (Third) provides:

Limitations on Jurisdiction to Prescribe
(1) ... a state may not exercise jurisdiction to prescribe law with respect to a person or activity having connections with another state when the exercise of such jurisdiction is unreasonable.
(2) Whether exercise of jurisdiction over a person or activity is unreasonable is determined by evaluating all relevant factors, including, where appropriate:
(a) the link of the activity to the territory of the regulating state ...;
(b) the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for the activity to be regulated, ...;
(c) the character of the activity to be regulated, the importance of regulation to the regulating state, the extent to which other states regulate such activities, and the degree to which the desirability of such regulation is generally accepted;

(d) the existence of justified expectations that might be protected or hurt by the regulation;
(e) the importance of the regulation to the international political, legal, or economic system;
(f) the extent to which the regulation is consistent with the traditions of the international system;
(g) the extent to which another state may have an interest in regulating the activity; and
(h) the likelihood of conflict with regulation by another state.
(3) When it would not be unreasonable for each of two states to exercise jurisdiction over a person or activity, but the prescriptions by the two states are in conflict, each state has an obligation to evaluate its own as well as the other state's interest in exercising jurisdiction, in light of all the relevant factors, Subsection (2); a state should defer to the other state if that state's interest is clearly greater.
Restatement (3d) of Foreign Relations Law § 403 (1987).

antee. Moreover, under the United States' laws, Marsoner should have expected that he would be required to disclose transactions with foreign banking institutions to the Commissioner of Internal Revenue. The grand jury's investigative function, which here involves investigating possible violations of tax laws, plays a vital role in our system of jurisprudence. *See In re Grand Jury Proceedings (United States v. Bank of Nova Scotia),* 691 F.2d 1384, 1387 (11th Cir.1982), *cert. denied,* 462 U.S. 1119, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983).

Austria has a prohibition against compelling an individual from being a witness against himself, which is similar to that embraced by the Fifth Amendment. As we previously discussed, the district court's order directing Marsoner to appear before the grand jury to sign the disclosure directive does not violate his Fifth Amendment rights.

Although more significant interests may be implicated in the next stage of the grand jury investigation, e.g., if the district court attempts to compel an Austrian bank to produce documents based on Marsoner's signed consent, those interests are beyond the scope of this appeal.[4] The disclosure directive is worded to indicate that it has been executed pursuant to an order of a United States court. Accordingly, the Austrian courts will be free to decide whether the directive constitutes valid consent under Austrian law. *See In re Grand Jury Proceedings (Yanagihara),* 709 F.Supp. 192, 196 (C.D.Cal.1989) (noting that consent was "framed so as to permit the foreign authorities to render their own judgment on its validity"). We find it preferable to allow the Austrian courts to decide what effect to give the disclosure directive with respect to Austrian bank records.

On balance, we find that the United States' interest in obtaining Marsoner's signature outweighs Austria's interest in preventing a United States court from compelling an Austrian citizen residing in the United States to appear before a grand jury to execute a disclosure directive authorizing disclosure of bank information from unidentified domestic or foreign banks.

## V.

### Conclusion

Marsoner's challenges to the district court's order compelling him to sign the directive do not constitute just cause for his refusal to do so. *See* 28 U.S.C. § 1826(a). Accordingly, the district court did not abuse its discretion by holding Marsoner in contempt. *See In re Grand Jury Proceedings (Doe),* 801 F.2d at 1167.

**AFFIRMED.**

PREGERSON, Circuit Judge, dissenting:

I dissent from the decision affirming the district court's order finding Reinhold Marsoner in contempt of court.

The district court ordered Marsoner to sign the disclosure directive authorizing disclosure of information and production of all documents in possession of a bank, *including Austrian banks,* under threat that noncompliance would result in his incarceration and imposition of a fine. Marsoner refused to sign, and the district court ordered Marsoner incarcerated until he signs the disclosure directive or until the term of the grand jury expires in October 1994.

It is uncontroverted that coerced consent would violate Austrian law. The experts on Austrian law, Bruce Zagaris and Wulf G. Hauser, both expressed the opinion that incarcerating an individual as punishment for refusing to sign a disclosure directive authorizing release of Austrian bank records violates the European Convention on Human Rights ("ECHR"), which is considered constitutional law in Austria. Zagaris decl. ¶ 80; Hauser decl. ¶¶ 41–42.[1] Austria prohibits the use of coercion or threats to obtain a confession or other evidence. Hauser decl.

---

4. We reiterate the limited scope of the district court's order: it compels Marsoner to execute the disclosure directive authorizing and directing unspecified banks to disclose information and produce documents. The order does not compel any bank, official, employee, or any other third person to produce any bank records.

1. Reference is to the affidavits of the experts submitted by Marsoner to the district court.

¶ 42. According to Zagaris and Hauser, an Austrian court is likely to interpret Marsoner's compelled consent as violating Articles 3, 6, and 8 of the ECHR.[2] Zagaris decl. ¶ 80; Hauser decl. ¶¶ 41–42.

Because the district court's order is coercive and probably violates Austrian law, we should balance the "competing" interests of the two nations to determine whether notions of international comity preclude enforcement of the coercive order. *See United States v. Vetco Inc.*, 691 F.2d 1281, 1288 (9th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). Under the Restatement (Third) of Foreign Relations § 403(2)(h), we consider the likelihood that the district court's exercise of jurisdiction conflicts with regulation by Austria. We are obligated to evaluate each state's competing interests in exercising jurisdiction, and we "should defer to the other state if that state's interest is clearly greater." *Id.* at § 403(3).

Austria's Law on Extradition and Mutual Assistance in Criminal Matters prohibits foreign authorities from conducting investigations or procedural acts on Austrian territory. Bundesgesetz vom 4. Dezember 1979, uber die Auslieferung und die Rechtshilfe in Strafsachen (Auslieferungs- und Rechtshilfegesetz), *Bundesgesetzblatt* No. 529/1979 (hereinafter "ARHG") § 59. *See also* Zagaris decl. ¶ 75; Hauser decl. ¶ 50. According to Zagaris, the only means by which foreign prosecutors may obtain Austrian bank records is to apply through or comply with the ARHG or an applicable treaty. Zagaris decl. ¶¶ 75, 83. Because there currently is no applicable treaty between the United States and Austria, the ARHG governs in this case. Hauser decl. ¶ 48.

"[N]o legal assistance [from Austria] is possible under the ARHG if the claimed violation of the foreign law consists in a violation of tax or customs law." Hauser decl. ¶ 49 (citing ARHG § 15). Accordingly, legal assistance is "impossible in the present case." Hauser ¶ 49. Zagaris expressed the opinion that the compelled consent violates the ARHG. Zagaris decl. ¶ 82.

Both experts expressed the opinion that "[a] compelled consent is essentially an effort to circumvent the prohibition against official acts in Austria." Zagaris decl. ¶ 75. *See* Hauser decl. ¶ 50. *See also United States v. Davis*, 767 F.2d 1025, 1034 (2d Cir.1985) ("[I]n recent years litigants have often attempted to circumvent [the limitations of international comity] by seeking an order compelling the record-owner to consent to the disclosure of the record"). According to the undisputed testimony of both experts, an Austrian court is likely to rule the consent unenforceable.[3] Zagaris ¶ 82. Thus, forcing Marsoner's signature appears unlikely to achieve the intended result. Therefore, on balance, Austria's interest in protecting its citizens and regulating official acts in Austria appears to outweigh the United States' interest in obtaining Marsoner's signature.

Although the act of compelling Marsoner's signature takes place wholly within the United States, it is designed to accomplish what could not otherwise be accomplished in Austria through the ARHG: it is an attempt to obtain Austrian bank records otherwise inaccessible to the United States through the ARHG. It might be an affront to the United States for "a foreign court ... to compel someone to violate our laws within our borders." *In re Sealed Case*, 825 F.2d 494, 498–99 (D.C.Cir.), *cert. denied*, 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 391 (1987). Likewise, it might also be an affront for a United States court to compel an action, which is performed in the United States but has ramifications in a foreign country, in an attempt to circumvent the laws of that foreign country.

The majority cites *In re Grand Jury Proceedings (Yanagihara)*, 709 F.Supp. 192

---

**2.** Article 3 states, "no-one shall be subjected to torture or to inhuman or degrading treatment or punishment." Article 6 states, that everyone charged with a criminal offense "is entitled to a fair ... hearing" and has the right "to examine or have examined witnesses against him...." Article 8 states, "everyone has a right to respect for his private and family life ... there shall be no interference by a public authority with the exercise of this right."

**3.** Common sense supports the view that Austrian courts are unlikely to enforce the consent. To do so would be akin to endorsing a violation of the ARHG.

(C.D.Cal.1989), when discussing its preference that Austrian courts determine the validity of Marsoner's compelled consent. That case is distinguishable on the ground that the appellant had failed to show that compelling his consent was inconsistent with Swiss law. *Id.* at 196. By contrast, here, the uncontroverted testimony presented indicates that compelling Marsoner's consent is inconsistent with Austrian law. I would conclude that notions of international comity preclude enforcement of the district court's coercive order.