## In re GRAND JURY PROCEEDINGS.

### Ahmad SHAMS, Witness–Appellant,

v.

### UNITED STATES of America, Respondent–Appellee.

### No. 89–55320.

United States Court of Appeals, Ninth Circuit.

Submitted April 21, 1989.*

Decided April 26, 1989.

Donald M. Re, Los Angeles, Cal., for witness-appellant.

Mark A. Byrne, Asst. U.S. Atty., U.S. Attys. Office, Los Angeles, Cal., for respondent-appellee.

Before WALLACE, ALARCON, and NORRIS, Circuit Judges.

PER CURIAM.

Ahmad Shams, a witness before federal grand jury, appeals the district court's judgment holding him in civil contempt for refusing to sign a consent directive granting the government access to foreign bank records. We affirm.

BACKGROUND

Ahmad Shams was subpoenaed to appear before a federal grand jury and produce records relating to Swiss bank accounts allegedly under his control. The grand jury sought the records in connection with an investigation into possible violations of United States tax laws. Shams denied having any documents responsive to the subpoena.

The grand jury then issued a second subpoena calling for Sham's appearance. At

---

* The panel unanimously agrees that this case is appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34–4.

the scheduled proceeding, the prosecutor and the grand jury foreman asked Shams to sign a consent form directing officials of foreign banks where Shams maintains accounts to disclose records of such accounts to the United States government. After Shams refused to sign the consent directive, the district court entered an order directing Shams to appear before the grand jury and sign the directive. Shams still refused to sign the decree, and the district court adjudged him in contempt pursuant to 28 U.S.C. § 1826.

ANALYSIS

A. *Jurisdiction to Issue Consent Directive*

The district court found that it had jurisdiction under 28 U.S.C. § 1826 (1982) to order Shams to sign the consent directive. Shams contends that section 1826 is inapplicable to consent decrees and, therefore, the district court lacked jurisdiction to issue the order.[1]

Section 1826 provides, in pertinent part: "Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court upon such refusal ... may summarily order his confinement."

Shams argues that section 1826, by its terms, does not apply to the facts of this case because he did not refuse to "testify or provide other information." He contends that the statute does not apply to his refusal to sign the consent directive. We decline to adopt Sham's narrow reading of the statute.

In a factually similar case, the Second Circuit held that section 1826 and the inherent supervisory power of a district court over a grand jury provide a district court with jurisdiction to compel a witness to sign a consent directive authorizing the release of foreign bank records. *See In re Doe*, 860 F.2d 40, 49 (2nd Cir.1988). We agree with the Second Circuit's reasoning that section 1826 provides authority for a district court to order a grand jury witness to sign a consent directive.

Section 1826 expressly authorizes a district court to order the production of records. Although the district court in this case did not order Shams to produce his bank records, the court's order compelling Shams to sign the consent directive is intended to facilitate the government's acquisition of Sham's foreign bank records.[2] Hence, because the order is within the scope of section 1826, the district court had jurisdiction under the statute to compel Shams to sign the consent directive.

B. *Considerations of Comity*

Shams next contends that the district court order violates notions of international comity. He states that the order will require a foreign national to violate the law of his country.

A party relying on foreign law has the burden of showing that such law bars

---

1. The Supreme Court recently determined that a consent directive such as the one Shams was ordered to sign is not testimonial in nature, and thus is not subject to the Fifth Amendment privilege against self-incrimination. *See Doe v. United States*, —— U.S. ——, 108 S.Ct. 2341, 2352, 101 L.Ed.2d 184 (1988). The Supreme Court in *Doe* did not determine whether the district court had jurisdiction to order the witness to sign the consent directive. *Doe*, 108 S.Ct. at 2345 n. 3. The Court noted that the petitioner "has not challenged the [Fifth Circuit] Court of Appeals' conclusion regarding the district court's authority for entering its order, and we do not address that issue here." The Fifth Circuit had concluded that the All Writs Act, 28 U.S.C. § 1651(a) (1982) afforded the district court jurisdiction to compel execution of the consent form. *Id.*

Shams contends that, contrary to the Fifth Circuit's conclusion, the All Writs Act does not confer jurisdiction to compel a grand jury witness to sign a consent directive. We need not address this issue because the district court in this case did not base its jurisdiction on the All Writs Act.

2. Moreover, courts have applied section 1826 to many acts not explicitly addressed in the language of the statute. A court may compel a suspect to provide a handwriting exemplar, *Palmer v. United States*, 530 F.2d 787, 789 (8th Cir.1976); to provide a voice exemplar, *In re Grand Jury Proceedings, Hellmann*, 756 F.2d 428, 430 (6th Cir.1985); to stand in a lineup, *In re Pantojas*, 628 F.2d 701, 704 (1st Cir.1980); and to provide fingerprints, *In re Liberatore*, 574 F.2d 78, 82 (2nd Cir.1978).

compliance with a court order. *United States v. Vetco Inc.*, 691 F.2d 1281, 1289 (9th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). The consent decree in this case is intended to allow Swiss banks to release records without violating any obligation of confidentiality.[3] Shams cites no specific Swiss law that would be violated should a Swiss bank disclose bank records in compliance with the consent directive. Moreover, he fails to state what action the Swiss government might take against a Swiss national who complies with the disclosure request. Accordingly, because Shams has made no showing that the consent directive is inconsistent with any Swiss law, he has failed to meet his burden on the comity issue.

## CONCLUSION

The district court's judgment of contempt is affirmed.

---

**3.** The consent directive provides, in pertinent part, "This direction is intended to apply to any law concerning any obligation of confidentiality of the Swiss Confederation, and to any implied contract of confidentiality which may be im- posed by Swiss common law, and shall be construed as consent with respect to such laws as applied to any bank account(s) for which I may be a relevant principal."