**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**COLLEGE BOUND, INC., George Ronkin, and Janet Ronkin, Defendants.**

Civ. A. No. 92–0979 (RCL).

United States District Court, District of Columbia.

March 30, 1994.

Stephen J. Crimmins, Thomas C. Newkirk, S.E.C., Washington, DC, for plaintiff.

Gary Weinfeld, Morris Weinberg, Jr., John F. Lauro, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

This case comes before the court on plaintiff's motion for an order requiring the Ronkins to execute consent directives and to confirm their compliance with this court's April 28, 1992 order ("Plf.'s Mot."). After

consideration of the filings of both parties and the relevant law, it is hereby ORDERED that plaintiff's aforementioned motion is GRANTED in part and DENIED in part for the reasons set forth below.

## I.   Introduction

On April 28, 1992, Judge Charles R. Richey entered an order freezing the assets of the Ronkins and ordered repatriation of the Ronkins' assets. Subsequently, the Ronkins reported personal access to very few liquid resources and requested a modification of the freeze order. The Securities and Exchange Commission ("SEC") consented to a modification, releasing $10,000 to the Ronkins to meet ongoing expenses.[1]

On May 8, 1992, the SEC obtained a declaration from the Ronkins' former national marketing director alleging that the Ronkins possessed gold bars worth $10,000 and kept these bars in a Swiss bank. Plf.'s Mot. ¶ 3; Ex. B. On that same date, the SEC obtained documents from College Bound reflecting a April 2, 1992 pledge of College Bound stock for a $1.1 million loan from a Swiss bank. *Id.* ¶ 4.[2]

These revelations prompted the SEC to request information and documents concerning the Ronkins' financial dealings from foreign banks. To this end, the SEC seeks "consent directives," signed by the Ronkins in multiple originals.[3] In addition, the SEC moves the court to order counsel for the Ronkins' to file a report with the court, representing whether the Ronkins have complied with this court's April 30, 1992 order.[4]

## II.   Authority to Compel Defendants' Signature on Consent Forms

■ Defendants claim that this court does not have the power to compel blank consent directives. They suggest that this power has only been reserved for the investigative function of grand jury proceedings.

■ District courts have broad discretion in supervising discovery. An order to compel defendants to sign a consent form is a permissible method of obtaining that discoverable information in a civil context, provided that the form of the consent does not abrogate defendants' Fifth Amendment or due process rights. *See Foley v. Juron Associates,* 1990 WL 39177, 1990 U.S. Dist. LEXIS 3583 (E.D.Pa.1990); *Bank of Crete v. Koskotas,* 1989 WL 46587, 1989 U.S. Dist. LEXIS 4289 (S.D.N.Y.1989) (both using consent directives in a civil context).[5]

■ In order to protect against abrogation of defendants' Fifth Amendment or due process rights, the consent form must conform to the requirements set out in *Doe v. United States,* 487 U.S. 201, 215–18, 108 S.Ct. 2341, 2350–52, 101 L.Ed.2d 184 (1988). The form must not require defendants to admit the existence of any account in any bank over which any defendant has control. It merely authorizes the bank to release information regarding any such accounts that do exist. These forms should not identify the relevant bank.[6] The form must also state that it was

---

1.   On May 27, 1992, this case was reassigned to Judge Stanley Sporkin. On September 9, 1992, this case was again reassigned to Judge Royce C. Lamberth.

2.   These documents also reflect a $1.1 million transfer from one Swiss bank to another. This transfer apparently represents one of College Bound's duties under a preexisting Swiss loan. Defs.' Opp'n Plf.'s Mot. at 2–3.

3.   Plaintiff SEC attached consent directive forms to the proposed order submitted with plaintiff's motion.

4.   *See* Order Freezing Assets of Individual Defendants, Civ. No. 92–0979 (D.D.C. Apr. 30, 1992).

5.   Although authority for the use of such consent forms in civil discovery is sparse, their use has

been approved by the Supreme Court in the context of grand jury investigations. *See Doe v. United States,* 487 U.S. 201, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988).

6.   As stated in *Doe:*

Thus, the form does not acknowledge that an account in a foreign financial institution is in existence or that it is controlled by petitioner. Nor does the form indicate whether documents or any other information relating to petitioner are present at the foreign bank, assuming that such an account does exist.... Although the executed form allows the Government access to a potential source of evidence, the directive itself does not point to Government toward hidden accounts or otherwise provide information that will assist the prosecution in uncovering evidence. The Government must locate

executed pursuant to court order. To do otherwise "would be dishonest and misleading."[7]

 Plaintiffs also challenge the consent directives on relevancy grounds. Under the Federal Rules of Civil Procedure, a party to a civil action may obtain discovery as to any matter which is relevant to the subject matter of the litigation. Fed.R.Civ.P. 26(b)(1). The information sought here, the location and nature of defendants' Swiss accounts and the banks' records of transactions involving those accounts, is relevant to the pending action. This court holds that the use of the consent directives to obtain discovery from Swiss banks is "reasonably calculated to lead to the production of relevant evidence," Fed. R.Civ.P. 26(b), especially concerning the Ronkins' possible transactions involving College Bound stock, and the Ronkins' pledge of College Bound stock for a $1.1 million loan from a Swiss bank on April 2, 1992.

Thus, this court directs the plaintiff to redraft the consent directives to comply with the requirements set forth in *Doe*; specifically, the form must be revised to reflect that it is executed pursuant to court order to avoid implication of the Ronkins' asserted consent.

### III. Confirm Compliance with Repatriation Order

 In order to determine whether the Ronkins are complying with the April 30, 1992 order or whether they are in contempt, the SEC requests an order forcing counsel for the Ronkins to report to the court whether the Ronkins have complied with ¶ I(b) of the court's order requiring repatriation. In

the opposition to plaintiff's motion, defendant's counsel states that "the Ronkins have taken all steps necessary to ensure compliance with that Order." Opp'n Plf.'s Mot. at 6. This statement by counsel should suffice in the stead of any formal order by the court. As to the request for Ronkins' counsel to file a statement of compliance, this motion is denied.

### IV. Conclusion

For the reasons set forth herein, the plaintiff's motion for an order requiring defendants to sign consent directives and to confirm compliance is GRANTED in part and DENIED in part. It is hereby ORDERED that:

1. Plaintiff shall redraft the consent directives to comply with the requirements set forth in this opinion. Specifically, the form must be revised to reflect that it is executed pursuant to court order to avoid implication of the Ronkins' asserted consent.

2. Plaintiff shall file the revised consent directives with this court within ten days of the date of this memorandum opinion and order.

3. The court will then order the defendants to execute the forms.

4. Plaintiff's motion for an order directing Ronkins' counsel to file a statement of compliance is DENIED.

SO ORDERED.

---

that evidence " 'by the independent labor of its officers....' " ... [T]he government is not relying upon the "truth-telling" of Doe's directive to show the existence of, or his control over, foreign bank account records. Given the consent directive's phraseology, petitioner's compelled act of executing the form has no testimonial significance either.
*Doe*, 487 U.S. at 215, 108 S.Ct. at 2350 (citations omitted).

7. *See Bank of Crete v. Koskotas*, 1989 WL 46587, 1989 U.S. Dist. LEXIS 4289 (S.D.N.Y.1989) ("While we have noted that enforcement of this directive [without an 'executed pursuant to court order' disclosure] does not rise to a constitutional violation, it nevertheless offends basic precepts of honest behavior by invoking the district

court's imprimatur on a document that would be misleading.") (citing *In re N.D.N.Y. Grand Jury Subpoena*, 811 F.2d 114, 118). With regard to the effect of a forced-consent disclosure requirement, Judge Wood went on to state that

[i]f the Second Circuit were faced with this issue in the context of civil discovery, that Court would place a higher value on avoiding the district courts' participation in the creation of false or misleading documents, than on the parties' ability to obtain full discovery. Plaintiff may be left in the lamentable situation of being unable to obtain vital discovery because the court ordered consent forms are useless, but the Second Circuit's strong language does not permit me to conclude otherwise.
*Id.*