**UNITED STATES of America and Jimmy Chan, Revenue Agent, Plaintiffs–Appellees,**

v.

**Cheng C. KAO and Susan L. Kao, Defendants–Appellants.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Chin Wu and Su–Chin KAO, Defendants–Appellants.**

**Nos. 94–15569, 94–15570.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 1995.

Decided April 11, 1996.

Robert H. Solomon, McCutchen, Doyle, Brown & Emersen, San Francisco, California, for defendants-appellants.

John A. Dudeck, Jr., United States Department of Justice, Tax Division, Washington, DC, for plaintiffs-appellants.

Before: KOZINSKI and HAWKINS, Circuit Judges, and SILVER,* District Judge.

SILVER, District Judge:

The Kaos are taxpayers who are being civilly investigated by the Internal Revenue Service ("IRS"). They appeal a consolidated district court order enforcing four summons served by the IRS and compelling the Kaos to execute consent directives. We conclude that 26 U.S.C. § 7602 does not authorize the IRS to compel taxpayers to sign consent directives which would enable the IRS to obtain records from third parties through means other than those established in 26 U.S.C. § 7609. Therefore, we reverse the district court's order.

In December, 1991, agent Jimmy Chan began conducting a tax investigation of Kolyn Enterprises Corporation (Kolyn), shareholder Dr. Cheng Kao, and his wife Susan Kao. Agent Chan was attempting to determine the Kaos' tax liability for the years 1988 through 1990, along with any violations of the internal revenue laws.

Chan's investigation allegedly revealed that Kolyn's net bank deposits exceeded the gross income reported on its tax returns by a total of $6,777,319 for the years 1988–1991. Most of the deposits were overseas wire transfers from offshore banks, recorded in

---

\* Honorable Rosyln O. Silver, United States District Judge for the District of Arizona, sitting by designation.

**116**

the Kolyn account as loans and capital contributions from shareholders. The audit purportedly indicates that Dr. Kao and his father, Chin Wu Kao, sent several of the overseas wire transfers to Kolyn. According to Chan, Dr. Kao provided several different explanations of the source of those funds. Agent Chan claims that he requested documents that would substantiate the nature of the wire transfers but Kao and Kolyn failed to provide them.

Acting pursuant to 26 U.S.C. § 7602, on January 4, 1993, Agent Chan served summons on Dr. Kao and Susan Kao, and on Dr. Kao's parents, Chin Wu Kao and Su–Chin Kao, ordering each person to appear and sign an attached consent directive. The identical directives direct "any bank, financial institution, trust company, foundation, or management company ... to disclose all information and deliver [to the IRS] copies of all documents of every nature" related to an account or trust of the signatory. The trust directive states that it provides "irrevocable authority." It has no expiration date. Neither does it limit the years for which information may be sought or limit the jurisdictions or institutions to which it applies.

The Kaos refused to sign the consent directives. Thereafter, the United States brought suit to enforce the summons. On March 8, 1994, the district court entered a consolidated order enforcing the summons and compelling the taxpayers to execute the directives.[1] The district court concluded that the consent directives did not violate the third-party summons procedure set forth in 26 U.S.C. § 7609. The Kaos appeal the district court's order.

1. The district court modified the directives to indicate that they were signed pursuant to court order, in order to satisfy due process requirements.

2. The Kaos have not challenged the IRS's ability, under § 7602, to force them to sign anything. While we, thus, do not address the issue, it is hardly clear that the statutory language authorizes any such thing.

3. 26 U.S.C. § 7609 provides:
(a) Notice.
(1) In general.–If–

26 U.S.C. § 7602(a)(2) authorizes the IRS to summon a taxpayer "to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry." The only issue on appeal[2] is one of statutory interpretation. We must determine whether 26 U.S.C. § 7602 provides the IRS with the authority to require taxpayers to execute consent directives authorizing third-party financial institutions to provide the IRS with documents pertaining to taxpayer accounts.

■ We construe § 7602 with the goal of ascertaining Congressional intent. *F.D.I.C. v. McSweeney,* 976 F.2d 532, 537 (9th Cir.1992), *cert. denied,* 508 U.S. 950, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993). In doing so, we must consider the Internal Revenue Code as a whole, interpreting § 7602 in a manner that does not render other portions of the Code meaningless or superfluous. *See Boise Cascade Corp. v. U.S.E.P.A.,* 942 F.2d 1427, 1432 (9th Cir.1991). To determine whether, pursuant to § 7602, the IRS can compel taxpayers to sign consent directives designed to access third-party records, we must interpret § 7602 in light of the specific procedures for obtaining third-party records set forth in 26 U.S.C. § 7609.

■ In § 7609, Congress established several special procedures the IRS must follow to summon a third-party recordkeeper. These procedures are designed to provide limited protection to a taxpayer under investigation by the IRS. When the IRS serves a summons on a third-party record keeper, the taxpayer must be given notice. 26 U.S.C. § 7609(a).[3] The taxpayer has the

(A) any summons described in subsection (c) is served on any person who is a third-party record-keeper, and
(B) the summons requires the production of any portion of records made or kept of the business transactions or affairs of any person (other than the person summoned) who is identified in the description of the records contained in the summons,
then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall

right to intervene in any proceeding involving enforcement of the summons. 26 U.S.C. § 7609(b)(1). The taxpayer also has the option to begin a proceeding to quash the summons. 26 U.S.C. § 7609(b)(2)(A). The taxpayer can challenge the summons in a number of ways, including: the documents the IRS seeks are irrelevant to the investigation, *United States v. Goldman*, 637 F.2d 664, 666–68 (9th Cir.1980); or, the summons has been issued in violation of 26 U.S.C. § 7602(c)(1), after the IRS has recommended to the Department of Justice that the taxpayer be prosecuted for criminal tax violations.

In passing § 7609, Congress was strongly influenced by concern for taxpayers' civil rights, including the right to privacy. Prior to passage of § 7609, the IRS had authority to summon third parties to obtain taxpayers' records without notifying the taxpayer. Although the IRS had implemented some safeguards, the Congress was concerned that taxpayers' privacy rights were not adequately protected. Both the House and Senate reports state:

> The committee believes that many of the problems in this area would be cured if the parties to whom the records pertain were advised of the service of a third-party summons, and were afforded a reasonable and speedy means to challenge the summons where appropriate. While the third-party witness also has this right of challenge, even under present law, the interest of the third-party witness in protecting the privacy of the records in question is frequently far less intense than that of the person to whom the records pertain.

H.R.Rep. No. 658, 94th Cong., 2d Sess., at 307 (1975), *reprinted in,* 1976 U.S.C.C.A.N. 2897, 3203; S.Rep. No. 938, part 1, 94th Cong., 2d Sess., at 368–69 (1976); *reprinted in,* 1976 U.S.C.C.A.N. 3439, 3798.

■ Both the language and the legislative history of § 7609 clearly indicate that Congress implemented procedures designed to afford taxpayers some protection when the IRS attempts to obtain taxpayer records from third parties. Nonetheless, the IRS argues that, pursuant to § 7602, it can compel the Kaos to sign consent directives authorizing the IRS to obtain documents from third-party record keepers without following the procedures set forth in 26 U.S.C. § 7609. Were we to interpret § 7602 as the IRS suggests, the limited protections that Congress has established in § 7609 would be eviscerated. The consent directives enable the IRS to obtain records from financial institutions without notifying the taxpayers. Moreover, the consent directives contain no limits on the financial institutions the IRS can contact, the documents the IRS can request, or the time limits during which the IRS must act.

The consent directives circumvent the limited protections Congress has provided to taxpayers in § 7609. Reading § 7602 to allow this procedure would render the protections set forth in § 7609 meaningless and its language superfluous. This Court will not read such a result into the statute absent clear language requiring it. Therefore, we conclude that 26 U.S.C. § 7602 does not authorize the IRS to compel taxpayers to sign the type of consent directive the Kaos were asked to sign.

The IRS argues that it is only seeking information from foreign accounts. If the directives applied only to accounts held in foreign banks, the limitations set forth in § 7609, which apply only to domestic accounts, would not apply. However, the directives contain absolutely no language limiting their scope to accounts in foreign banks. Thus, the directives as written implicate the procedural protections established in § 7609 for domestic accounts.

The IRS also argues that a third-party financial institution can decline to respond to the consent directives. Such an argument is inconsistent with the purpose of § 7609, whose notice and intervention provisions were premised on the inadequacy of third parties to protect the taxpayer's interests.

We note that our interpretation of § 7602 is consistent with other court decisions curtailing efforts by the IRS to avoid the statu-

be accompanied by a copy of the summons which has been served and shall contain an

explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons.

tory mandates of § 7609. In *Neece v. IRS,* 922 F.2d 573 (10th Cir.1990), a bank voluntarily turned over taxpayers' records to the IRS. The taxpayers sued the bank under the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. §§ 3401–3422. The RFPA requires notice to a taxpayer before a bank can provide the IRS with the taxpayer's records.

In *Neece,* the IRS argued that it was entitled to informally review bank records under 26 U.S.C. § 7602. *Id.* at 576. The IRS referenced a provision of the RFPA authorizing "disclosure of financial records in accordance with procedures authorized by Title 26 [the Internal Revenue Code]." 12 U.S.C. § 3413(c). The Tenth Circuit rejected the IRS's argument, concluding that while § 7602 authorized the IRS to issue a third-party summons, § 7609 established the procedure the IRS was required to follow. *Id.* Because the IRS had not followed "procedures authorized by Title 26," the IRS and the bank were bound by the procedural requirements of the RFPA. *Id.* at 578.[4]

Section 7609 establishes the procedures for obtaining records from third-parties. Taxpayers cannot be summoned pursuant to § 7602 and asked to sign directives that would render the Section § 7609 procedures nugatory.

The district court's order enforcing the summons and compelling the taxpayers to execute the directives is VACATED.

---

4. A district court in Texas rejected a different attempt by the IRS to avoid the requirements of § 7609. The IRS attempted to obtain records on Mobil employees' tax exemptions from Mobil. *United States v. Mobil Corp.,* 543 F.Supp. 507, 508 (N.D.Texas 1981). The IRS claimed a right to obtain the records pursuant to 26 U.S.C.

§ 6001, which requires taxpayers to maintain tax records. *Id.* at 509. The court rejected this argument, concluding that § 6001 only imposes record keeping requirements on taxpayers. The procedures necessary to obtain records are established in §§ 7602–7610 and cannot be abrogated. *Id.* at 511–512, 515–516.