**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   WW-17-1226-TaSKu |
| ) | |
| MICHAEL R. MASTRO, ) | Bk. No.   2:09-bk-16841-MLB |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| JAMES F. RIGBY, JR., ) | |
| Chapter 7 Trustee, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **OPINION** |
| ) | |
| MICHAEL R. MASTRO, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on March 22, 2018
at Pasadena, California

Filed – June 5, 2018

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Marc L. Barreca, Bankruptcy Judge, Presiding

---

Appearances:   Rick Rein of Horwood Marcus & Berk Chartered argued for appellant James F. Rigby, Jr.; C. James Frush of Corr Cronin Michelson Baumgardner Fogg & Moore argued for appellee Michael R. Mastro.

---

Before:  TAYLOR, SPRAKER, and KURTZ, Bankruptcy Judges.

TAYLOR, Bankruptcy Judge:

**INTRODUCTION**

Extraordinary cases may require unusual measures; and this case certainly qualifies as extraordinary. Chief among the atypical events is debtor Michael Mastro's flight from the United States to avoid turning potentially significant assets over to chapter 7[1] trustee James F. Rigby, Jr. Debtor and his wife are now resident in France, and extradition efforts in a related criminal proceeding have failed.

As a result of this extraordinary lack of cooperation, the Trustee seeks unusual assistance in his attempt to identify and collect assets of the estate: He requests an order compelling Mastro to sign a consent directive, a rara avis in the bankruptcy world. He intends to send the executed document to international banks and financial entities in an attempt to identify undisclosed Mastro accounts.

Mastro opposed issuance of the consent directive with vehemence, and his opposition was successful. The bankruptcy court, while sympathetic to the Trustee's dilemma, declined to compel execution of the document because, it reasoned, it lacked any authority to do so.

The Trustee appealed, and he now asks us to rule that a bankruptcy court may issue a consent directive. As we agree

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

that the bankruptcy court had discretion to do so, we REVERSE and REMAND.

## FACTS[2]

The parties provide little background information about this 2009 involuntary bankruptcy case. As already noted, however, Mastro was not a cooperative involuntary debtor; he and his wife fled to France with estate assets. Their legal troubles include pending criminal charges. See generally Mastro v. Rigby, 764 F.3d 1090, 1092 (9th Cir. 2014) ("[A] French Court of Appeal has denied U.S. requests to extradite Linda and Michael."). The Trustee appears confident that estate assets outside his control exist.

In May 2017 (and nearly 4,000 docket entries after case initiation), the Trustee moved for an order under Rule 2004 and § 521(a)(3) and (4) allowing the "issuance for execution by the Debtor, Michael R. Mastro, of a Consent Directive."[3]

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] The Trustee's proposed consent directive reads in part:

I, Michael R. Mastro, a United States citizen, do hereby direct any bank, trust company, financial services company, brokerage entity, and other financial institution or branch thereof, and its officers, employees and agents ("Financial Institution"), located outside the territorial United States, at which I may have or may have had a bank or brokerage account of any kind however described upon which I am or was authorized to draw ("Accounts"), to disclose all information and deliver copies of all

(continued...)

3

The bankruptcy court denied the request. It expressed concern that the consent directive was a form of injunctive relief and concluded: "I still have to follow the law. I only have the authority, under Rule 2004, to do what Rule 2004 blesses. I don't see that it blesses consent directives, even if it does bless, as it does, issuance of subpoenas under [Civil] Rule 45."

The bankruptcy court entered a separate order denying the motion. That same day, the Trustee moved for reconsideration; treating it as a Rule 9023 motion, the bankruptcy court denied the motion.

The Trustee timely appealed. Because a Rule 2004 examination decision may be interlocutory, we granted leave to appeal under 28 U.S.C. § 158(a)(3).

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court abuse its discretion in denying the Trustee's request for an order compelling a consent directive and the Trustee's reconsideration motion?

---

[3](...continued)
documents of every interest in the Financial Institution's possession or control which relate to the Accounts, together with a certificate attesting to the authenticity of any and all such documents, to any agent or attorney of James F. Rigby, Jr., Trustee of the bankruptcy estate of Michael R. Mastro, who presents a copy of this Consent Directive.

**STANDARDS OF REVIEW**

We review the bankruptcy court's legal conclusions de novo. Los Angeles Cnty. Treasurer & Tax Collector v. Mainline Equip., Inc. (In re Mainline Equip., Inc.), 539 B.R. 165, 167 (9th Cir. BAP 2015). We otherwise review for an abuse of discretion a bankruptcy court's: (1) Rule 2004 decision, In re Dinubilo, 177 B.R. 932, 939 (E.D. Cal. 1993); Motor Coach Indus., Inc. v. Drewes (In re Rosenberg), 303 B.R. 172, 175 (8th Cir. BAP 2004); and (2) denial of a motion for reconsideration, Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner), 161 F.3d 1216, 1217 (9th Cir. 1998).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

In considering whether the bankruptcy court applied or rested its conclusion on an erroneous legal standard, we review legal conclusions de novo. See Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1123 (9th Cir. 2014).

**DISCUSSION**

The Trustee advanced several theories supporting his request that the bankruptcy court compel Mastro to sign the consent directive. He initially invoked Rule 2004 in connection with Mastro's duties under § 521(a)(3) and (4); then he argued that Civil Rule 45, as applied by Rule 2004(c), authorizes

5

consent directives; next, he argued that Civil Rule 26, as applied to Rule 2004 by Rule 9014, authorizes consent directives; and last, in his reconsideration motion, he directly invoked § 105.

On appeal, the Trustee abandoned his Civil Rule 45 argument; we do not consider it further.

**A.    Consent directives are investigatory tools.**

A consent directive is not necessarily or even often consensual: reported decisions involve cases where a court compels a person to sign the document.  The signatory identifies neither the contemplated recipients nor accounts in the consent directive.  Instead, the document generally directs any bank or other financial institution that receives the consent directive to disclose any accounts held by the signatory.  As a result, the signatory does not admit the existence of any account at any particular financial institution.

**1.    The Supreme Court found a consent directive permissible in <u>Doe v. United States</u>, 487 U.S. 201 (1988).**

Consent directives began to receive judicial scrutiny in reported decisions in the early 1980s.  <u>United States v. Ghidoni</u> involved Lawrence Ghidoni's indictment for tax evasion and the government's issuance of a records subpoena to the Florida branch of the Bank of Nova Scotia.  732 F.2d 814, 816 (11th Cir. 1984).  Bank officials, concerned about bank employees' exposure to criminal liability under Cayman Islands Law, suggested that Ghidoni sign a consent directive.  <u>Id.</u>  The district court then ordered him to sign one, Ghidoni refused to do so, and the district court found him in contempt.  <u>Id.</u>

6

The Eleventh Circuit affirmed. Id. It held, over a dissent, that compelling Ghidoni to sign the consent directive did not violate his Fifth Amendment privilege against self-incrimination because the directive was not testimonial in nature. Id. at 819. In resolving the question, the Eleventh Circuit highlighted that the directive spoke in the hypothetical. E.g., id. at 818 ("Rather, the directive states that **if** the accounts exist . . . .") (emphasis in original); id. ("Rather, the directive merely permits the bank to disclose information relating to any accounts with respect to which the **bank records** indicate Ghidoni's authority to draw (i.e., any accounts with respect to which the bank **thinks** Ghidoni has authority).") (emphasis in original).

Other circuits followed suit. United States v. Davis, 767 F.2d 1025, 1040 (2d Cir. 1985); United States v. Cid-Molina, 767 F.2d 1131, 1133 (5th Cir. 1985).[4] But opinions were not unanimous: The First Circuit, over a dissent by then-Judge Breyer, held that compelling a signature on a consent directive would be testimonial. In re Grand Jury Proceedings (Ranauro), 814 F.2d 791, 795-96 (1st Cir. 1987). See also United States v. Pedro, 662 F. Supp. 47 (W.D. Ky. 1987), vacated, 889 F.2d 1089 (6th Cir. 1989); Senate Select Comm. on Secret Military

---

[4] See also Two Grand Jury Contemnors v. United States (In re Grand Jury Subpoena), 826 F.2d 1166, 1171 (2d Cir. 1987); United States v. A Grand Jury Witness (In re N.D.N.Y Grand Jury Subpoena # 86-0351-S), 811 F.2d 114 (2d Cir. 1987) (disapproving use of consent directive that did not expressly say it was executed under court order); United States v. Lehder-Rivas, 827 F.2d 682 (11th Cir. 1987).

7

Assistance to Iran v. Secord, 664 F. Supp. 562, 565 (D.D.C.), vacated, 933 F. Supp. 1 (D.D.C. 1987); United States v. Cook, 678 F. Supp. 1292 (N.D. Ohio 1987); In re Grand Jury Investigation (Doe), 599 F. Supp. 746 (S.D. Tex. 1984).

As a result, issues related to the constitutionality of a consent directive worked their way up to the Supreme Court, which concluded in Doe v. United States that a consent directive was not testimonial in nature and, thus, did not violate the signer's Fifth Amendment privilege. 487 U.S. 201, 214-19 (1988). Only Justice Stevens dissented. Id. at 219 (Stevens, J., dissenting).

### 2. Doe controls our evaluation of Mastro's constitutionality argument.

Mastro does not question the Trustee's proposed form of consent directive. Instead, he asserts that recent developments in the act-of-production doctrine undercut Doe's holding and make Justice Stevens's dissent the better view.

But vague allusion to developments in the law and a half-hearted, paragraph-long discussion do not rise to the level of a cognizable argument justifying deviation from Supreme Court authority. We appreciate that Mastro wants to preserve his constitutionality argument for appeal. But we are bound by Doe, and Mastro cites no case that even suggests that Doe is no longer good law. Cf. In re Various Grand Jury Subpoenas, 248 F. Supp. 3d 525, 527-29 (S.D.N.Y. 2017) (concluding that the "Consent Directive Does Not Violate the Fifth Amendment" and citing Doe, 487 U.S. at 215). Accordingly, because Doe holds that consent directives are not testimonial, we reject Mastro's

8

argument that an order compelling execution of a consent directive would violate his Fifth Amendment privilege against self-incrimination.

### 3. Courts in non-bankruptcy cases rely on various sources of authority to issue consent directives.

In Doe, the Fifth Circuit held that the All Writs Act (28 U.S.C. § 1651) allowed the district court to issue the consent directive. 487 U.S. at 205 n.3. Because the petitioner did not challenge that conclusion on appeal, the Supreme Court did not address it. Id.

After Doe, reported decisions began to define the authority for issuance of consent directives with more precision. Some courts relied on the All Writs Act, but many were reluctant to rely on it exclusively because the All Writs Act is not an independent source of jurisdiction: to invoke it, the court must have some other jurisdictional basis. E.g., In re Grand Jury Proceedings, Yanagihara Grand Jury, 709 F. Supp. 192, 194 (C.D. Cal. 1989) ("The court agrees that jurisdiction may not rest on the All Writs Act alone."). See United States v. Denedo, 556 U.S. 904, 913 (2009) ("[T]he All Writs Act and the extraordinary relief the statute authorizes are not a source of subject-matter jurisdiction."); Doe v. INS, 120 F.3d 200, 204-05 (9th Cir. 1997).

In the context of criminal proceedings, the recalcitrant witness statute, 28 U.S.C. § 1826, which governs grand jury

9

witnesses, emerged as the primary jurisdictional hook.[5] Both the Ninth and Second Circuits held that the recalcitrant witness statute vested the district court with authority to compel and enforce a consent directive. In re Grand Jury Proceedings (Shams), 873 F.2d 238 (9th Cir. 1989); In re Doe, 860 F.2d 40, 49 (2d Cir. 1988).[6] As a result, both circuits declined to consider if the All Writs Act, in isolation, was sufficient. Shams, 873 F.2d at 239 n.1; In re Doe, 860 F.2d at 49.

The Second Circuit additionally held that the district court's inherent supervisory power over a grand jury provided the district court with the power to enforce a consent directive. In re Doe, 860 F.2d at 49.

Reported cases discuss the appropriateness of consent directives outside situations involving a grand jury less frequently, but government agencies such as the Commodity Futures Trading Commission, the Federal Trade Commission, the Consumer Financial Protection Bureau, the Securities and Exchange Commission, and the Internal Revenue Service use them.

---

[5]  See In re Grand Jury Proceedings, 709 F. Supp. at 194 ("Exercise of this court's jurisdiction is nonetheless permissible under 28 U.S.C. § 1826 (1982).  Through this statute, Congress authorized courts to compel a recalcitrant witness to testify in front of a grand jury and to provide necessary documents.  The order in this case is intended to produce just that result." (footnote omitted)).

[6]  Marsoner v. United States (In re Grand Jury Proceedings), 40 F.3d 959, 966 (9th Cir. 1994) ("Marsoner's challenges to the district court's order compelling him to sign the directive do not constitute just cause for his refusal to do so.  See 28 U.S.C. § 1826(a).  Accordingly, the district court did not abuse its discretion by holding Marsoner in contempt.").

10

Each of these agencies is vested by statute with investigatory powers, including the ability to issue subpoenas and compel testimony of witnesses.[7] And each can rely on such powers in

[7] The Commodity Futures Trading Commission and the Federal Trade Commission request and receive restraining orders that also direct individuals to sign a "Consent to Release of Financial Records" forms; the Consumer Financial Protection Bureau has done so as well. E.g., Fed. Trade Comm'n v. BunZai Media Grp., Inc., No. CV 15-4527-GW(PLAx), 2015 WL 5305243, 2015 U.S. Dist. LEXIS 123139 (C.D. Cal. Sept. 9, 2015); Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc., No. SACV 13-01267-JLS (JEMx), 2015 U.S. Dist. LEXIS 186915 (C.D. Cal. Apr. 30, 2015); U.S. Commodity Futures Trading Comm'n v. Capital Blu Mgmt., LLC, No. 6:09-CV-508-ORL-28DAB, 2010 WL 11508133, 2010 U.S. Dist. LEXIS 149233 (M.D. Fla. Apr. 20, 2010).

The Commodity Futures Trading Commission likely bases its use of consent directives on 7 U.S.C. § 9, which provides that it may: "subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records that the Commission deems relevant or material to the inquiry[]"; and require the "attendance of witnesses and the production of any such records . . . ." 7 U.S.C. § 9(5)&(6).

Similarly, the Federal Trade Commission likely grounds its use of consent directives in 15 U.S.C. § 49, which provides it with the power "to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation." 15 U.S.C. § 49.

And the Internal Revenue Service relies on 26 U.S.C. § 7602 for using consent directives directed at foreign financial institutions. That section allows the IRS to summon persons and have them produce "such books, papers, records, or other data . . . as may be relevant or material . . . ." 26 U.S.C. § 7602(a)(2).

Other agencies where case law identifies use of consent directives have similar statutorily-based investigative powers. The Consumer Financial Protection Bureau may "issue subpoenas for the . . . production of relevant papers, books, documents, or other material . . . ." 12 U.S.C. § 5562(b)(1). The Securities and Exchange Commission may "subpena

(continued...)

11

requesting and obtaining a consent directive.

The Internal Revenue Service's use of a consent directive was discussed and limited in United States v. Kao, 81 F.3d 114, 115-16 (9th Cir. 1996). The Ninth Circuit held that the IRS could not compel signature of a consent directive under 26 U.S.C. § 7602 because so doing could allow the IRS to obtain records from domestic financial institutions without notifying the Kaos, thus circumventing 26 U.S.C. § 7609, which establishes special procedures that the IRS must use to summon a domestic, third-party record keeper. Id. at 116–17. Notwithstanding this decision, the IRS continues to request consent directives where it seeks information from financial institutions outside the United States. E.g., United States v. Norwood, 420 F.3d 888 (8th Cir. 2005); United States v. Brayshaw, No. 2:14-MC-00088-MCE-KJN, 2016 WL 7048033, 2016 U.S. Dist. LEXIS 171003 (E.D. Cal. Oct. 20, 2016); United States v. Plath, No. 0:03-cv-60439-KAM, 2003-2 U.S. Tax Cas. (CCH) P50,729 (S.D. Fla. Oct. 29, 2003).[8]

---

[7](...continued)
witnesses . . . and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry." 15 U.S.C. § 78u(b).

[8] The IRS's Internal Revenue Manual provides some guidance on its use of consent directives. IRM 5.21.2.4 (2018) ("A consent directive, also known as a disclosure directive, is a document signed by the taxpayer that authorizes a third party to release to a U.S. court information regarding that taxpayer that is held by a foreign bank or a third party custodian."). The manual also explains how the IRS uses judicial process to compel a taxpayer to sign one. IRM 25.5.4.5.9 (2015) ("A summons
(continued...)

12

In the ordinary civil context, courts have also authorized consent directives based on their "broad discretion" to supervise discovery. See Bank of Crete v. Koskotas, No. 88-CIV-8412-KMW, 1989 WL 46587, at *1, 1989 U.S. Dist. LEXIS 4289, at *2–*3 (S.D.N.Y. Apr. 21, 1989) ("I hold that the issuance of an order compelling defendant to sign a consent form is within the court's broad discretion to supervise discovery and issue appropriate orders, provided that the form of the consent does not abrogate defendants' Fifth Amendment or due process rights."); see also SEC v. Coll. Bound, Inc., 155 F.R.D. 1, 2 (D.D.C. 1994) ("District courts have broad discretion in supervising discovery. An order to compel defendants to sign a consent form is a permissible method of obtaining that discoverable information in a civil context, provided that the form of the consent does not abrogate defendants' Fifth Amendment or due process rights."). And at least one court required signature of a consent directive in concert with the granting of a motion to compel under Civil Rule 37. See Hansel 'N Gretel Brand, Inc. v. Savitsky, No. 1:94-cv-04027-CSH-HBP, 1997 U.S. Dist. LEXIS 17615, at *1–*2, 1997 WL 698179, at *1 (S.D.N.Y. Nov. 10, 1997). The Bank of Crete and Hansel 'N

---

[8](...continued)
cannot be used to directly compel a taxpayer to sign a consent directive. However, if a summons for the foreign records is served on the taxpayer while in the United States, a federal district court can enforce the summons by directly ordering the taxpayer to produce the documents in his or her custody or control. Moreover, the Service can seek an order under IRC 7402(b) compelling a taxpayer to sign a consent directive authorizing the foreign institution to produce its records.").

13

<u>Gretel Brand, Inc.</u> cases are noteworthy because they do not involve a government agency.

**B.    Bankruptcy courts may compel a debtor to sign a consent directive on the request of a chapter 7 trustee.**

When we consider the obligations and enforcement mechanisms created by the Code and the investigatory tools available to the Trustee, we conclude that the bankruptcy court had discretion to authorize and enforce a consent directive at the request of the Trustee.

**1.    The Code imposes statutory investigatory duties on trustees and statutory disclosure obligations on debtors.**

A chapter 7 trustee is under a statutory duty to, among other things, collect "the property of the estate" and "investigate the financial affairs of the debtor . . . ." 11 U.S.C. § 704(a)(1)&(4).  Property of the estate includes a debtor's foreign bank accounts.  <u>See</u> <u>Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)</u>, 153 F.3d 991, 996 (9th Cir. 1998).

A chapter 7 debtor also has various, Code-imposed duties. 11 U.S.C. § 521(a).  A debtor must "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate . . . ."  11 U.S.C. § 521(a)(4).  That includes bank accounts, even foreign accounts.  And in the § 521(a)(4) context, a debtor's disclosure obligations are heightened: she must surrender information to the trustee even if she has not

been granted immunity under § 344. Id.[9] In addition, a debtor has a duty to cooperate with the chapter 7 trustee "as necessary to enable the trustee to perform the trustee's duties under this title . . . ." 11 U.S.C. § 521(a)(3).

Thus, the Trustee's investigatory powers resemble those of the governmental agencies that utilize consent directives. Like those agencies, the Trustee has a statutory authorization to require production of documents in the furtherance of an investigatory duty also created by statute.

And a debtor's duty to provide information and to cooperate in this investigation is at least as clear as that of a party subject to regulation by a governmental agency.

**2. Section 105 and Rule 2004 provide broad authority to a bankruptcy court and allow it to enter orders carrying out Code-imposed obligations.**

The Code and Rules provide powers and tools that allow a trustee to meet her responsibilities to investigate a debtor's financial affairs and to collect and liquidate a debtor's estate.

**Section 105.** Section 105(a) vests bankruptcy courts with broad residual power: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). And bankruptcy courts have "broad authority" under § 105(a) "to take any action that is necessary or appropriate to prevent an abuse

---

[9] Section 344, in turn, provides that "[i]mmunity for persons required to submit to examination . . . or to provide information in a case under this title may be granted under part V of title 18." 11 U.S.C. § 344.

15

of process . . . ." Marrama v. Citizens Bank of Mass., 549 U.S. 365, 375 (2007) (internal quotation marks omitted). Section 105(a) thus "confers authority to 'carry out' the provisions of the Code . . . ." Law v. Siegel, 134 S. Ct. 1188, 1194 (2014).

We long ago held that § 105(a) encompassed the powers of the All Writs Act in bankruptcy proceedings. Ad Hoc Protective Comm. for 10½% Debenture Holders v. Itel Corp. (In re Itel Corp.), 17 B.R. 942, 945 (9th Cir. BAP 1982). Indeed, both § 105(a) and the All Writs Act serve similar purposes.[10]

Although we recognize the breadth of § 105, we conclude, by analogy to those cases rejecting use of the All Writs Act as the sole basis for issuance of a consent directive, that it cannot justify issuance of a consent directive in isolation. Despite its broad language, § 105(a) is not a "roving commission to do equity." Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman), 325 F.3d 1168, 1175 (9th Cir. 2003) (internal quotation marks omitted). It cannot be used to take "action that the Code prohibits." Law, 134 S. Ct. at 1194.

But § 105 does not operate in isolation when a trustee requests a consent directive; instead, it operates in concert with the Code's investigatory and disclosure requirements. A consent directive order under § 105 would enable the trustee's

---

[10] Consider the relevant texts: Section 105(a) allows the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The All Writs Act permits "all courts established by Act of Congress" to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

16

§ 704 investigation of the debtor's financial affairs; and it is consistent with a debtor's § 521 obligation to cooperate with this investigation.

In short, bankruptcy courts may use § 105(a) to issue a consent directive and carry out the provisions of §§ 704 and 521.

**Rule 2004.** Rule 2004 is the basic discovery device in bankruptcy cases. In re Subpoena Duces Tecum, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011).[11] It allows broad examination relating to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b); see also id. (discussing scope of examination in chapter 11, 12, and 13 cases).

As the Rule's text makes clear, the scope of a Rule 2004 examination is "unfettered and broad"; the rule essentially permits a "fishing expedition." In re Subpoena Duces Tecum, 461 B.R. at 829 (quoting and citing In re GHR Energy Corp., 33 B.R. 451, 453–54 (Bankr. D. Mass 1983)). And the examination may "extend to third parties who have had dealings with the debtor." In re Fin. Corp. of Am., 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990).

We acknowledge that Rule 2004 is not without limits. It

---

[11] Indeed, the "sweeping general examination" of debtors is "traceable to the first bankruptcy statute enacted by the English Parliament more than 450 years ago." In re Symington, 209 B.R. 678, 683 (Bankr. D. Md. 1997). Bankruptcy examinations thus predate modern federal civil procedure. Id. at 684.

17

should not be used "to abuse or harass . . . ." In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); cf. Fed. R. Bankr. P. 9011(b)(1). Nor should it "stray into matters which are not relevant to the basic inquiry." In re Mittco, Inc., 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984).[12] Thus, we stop short of a determination that Rule 2004, in isolation, would justify issuance of a consent directive to anyone other than a chapter 7 trustee.[13] But where, as here, it enables the financial affairs investigation required by the Code, it is firmly tethered to the Trustee's § 704 statutory duties. Thus, issuance of a consent directive in connection with a Rule 2004 examination request is entirely consistent with the broad inquiry into a debtor's financial affairs authorized by the Code.

### 3. Case law allowing use of consent directives in other contexts supports our determination that they are appropriate in a bankruptcy context.

Our view that the statutory rights and duties created by the Code provide a basis for issuance of a consent directive is bolstered by our review of regulatory agencies' use of consent directives. Various statutes provide these agencies with investigatory obligations and authority and the ability to summon persons and to obtain production of documents and data.

---

[12] E.g., In re Wilcher, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs."); In re Fin. Corp. of Am., 119 B.R. at 733 ("Matters having no relationship to the debtor's affairs, or the administration of the bankruptcy estate are not proper subjects of a Rule 2004 examination.").

[13] Or other trustee vested with similar responsibilities by the Code.

18

Based on this authority, even without a tool such as a Rule 2004 examination, the agencies use consent directives to conduct statutorily required investigation.[14]

A chapter 7 trustee, similarly, is statutorily tasked with investigating financial affairs and collecting estate property, and Rule 2004 allows a trustee to compel the production of documents.  Thus, a trustee uses a consent directive in the same manner as the agencies discussed above.

Our conclusion is similarly supported when we consider that debtors' disclosure obligations are analogous to the obligations of witnesses under subpoena.  As we noted above, the Code requires a debtor to surrender to a trustee "any recorded information, including books, documents, records, and papers, relating to property of the estate . . . ."  11 U.S.C. § 521(a)(4).  This statutory text mirrors language that the Ninth Circuit has already used to justify a consent directive when it held that the recalcitrant witness statute, 28 U.S.C. § 1826, authorizes a district court to hold a grand jury witness who refuses to sign a consent directive in contempt.  Shams, 873 F.2d at 239.  That section, in turn, refers to a witness who "refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material . . . ."  28 U.S.C. § 1826(a).  Refusing to sign a

_____

[14]  We acknowledge the limitations the Ninth Circuit placed on the IRS in Kao.  But the Code does not contain any restriction analogous to 26 U.S.C. § 7609 or applicable to discovery in relation to foreign bank accounts.

19

consent directive, then, must be contemptuous because it is refusal to "provide other information," as plainly required by statute.

The statutory texts are similar. Both statutes' illustrative, "including" list refer to "books," "documents," "records," and "papers." The recalcitrant witness statute goes a little further and references "recording" and "other material" in its illustrative list. And we acknowledge a slight wording difference between the two: § 521(a)(4) refers to "recorded information" while 28 U.S.C. § 1826(a) refers to "other information." But the account information sought by a consent directive falls under each term; it is both recorded information and other information. Thus, to the extent 28 U.S.C. § 1826(a) authorizes the use of a consent directive, so would § 521(a)(4).

Rule 2004 serves as an additional bridge between §§ 521 and 704, as it provides trustees a mechanism to require debtors to produce. And, again, to the extent Rule 2004 is not sufficiently broad, § 105 would allow issuance of a consent directive to require a debtor to fulfill a statutory duty. Section 105(a) is not being used as an independent basis for the consent directive; it is, rather, being used in concert with §§ 521 and 704.[15]

[15] As a result, the Ninth Circuit's decision to not decide whether the All Writs Act independently authorizes a consent directive does not worry us. The Code affirmatively requires disclosure of the information the Trustee seeks by way of consent directive; so using § 105(a) to compel a debtor to sign a consent directive for a trustee would not be an untethered use of the section.

20

Accordingly, we hold that a bankruptcy court may use § 105(a) and Rule 2004 to compel a debtor to sign a consent directive in furtherance of the debtor's § 521(a)(4) obligation to provide recorded information to the trustee and in furtherance of a trustee's § 704 duties to investigate a debtor's affairs.[16]

### 4. On remand, the bankruptcy court may exercise discretion.

The bankruptcy court decided that it lacked the authority to issue a consent directive. The Trustee asks us to reverse that decision and to order Mastro to execute the consent directive. But our conclusion that the bankruptcy court could compel Mastro to sign a consent directive does not mean that a consent directive should issue under the present facts. We leave that decision in the first instance to the bankruptcy court's discretion.

The bankruptcy court's discretion is at least two-fold:

---

[16] Having concluded that a bankruptcy court has the discretion to issue a consent directive, we briefly reject the Trustee's Civil Rule 26 theory. He seeks to import civil discovery processes to Rule 2004 by arguing that a Rule 2004 motion is a Rule 9014 contested matter.

A Rule 2004 motion is only sometimes — and not always — a contested matter, and a contested matter is not required before a bankruptcy court authorizes a Rule 2004 examination. In re Subpoena Duces Tecum, 461 B.R. at 831. As a result, when the Trustee filed his motion, he did not necessarily have Civil Rule 26 at his disposal; it thus did not support issuance of the consent directive when the motion was filed.

And in any event, the contest in an opposed Rule 2004 examination involves the right to the examination itself, not the particular tool used for examination.

21

(1) should the Rule 2004 consent directive order issue?; and (2) how should it issue?  The underlying bankruptcy case has a decidedly international bent; the consent directive involves international institutions, so consideration of international comity may be involved in answering the first question.  See, e.g., Shams, 873 F.2d at 239–40 (considering Swiss law); Marsoner, 40 F.3d at 964 (considering Austrian law).

The second question matters because a Rule 2004 examination "does not offer the procedural safeguards available under the Federal Rules of Civil Procedure . . . ."  In re Dinubilo, 177 B.R. at 939.  See id. at 939–40 and 940 n.12 (comparing procedures); Simon v. FIA Card Servs., N.A., 732 F.3d 259, 268 n.6 (3d Cir. 2013) ("Rule 2004 examinations . . . are subject to few of the procedural safeguards normally applicable to discovery under the Federal Rules of Civil Procedure." (internal quotation marks omitted)).  So in some circumstances it may be appropriate for the bankruptcy court to "borrow" procedural protections from the Civil Rules and apply them to Rule 2004 examinations.  In re Valley Forge Plaza Assocs., 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990).

We do not have the bankruptcy court's familiarity with the case.  It may yet, exercising its discretion, appropriately deny the consent directive request.  We conclude here only that it wrongly ruled that it lacked any discretion.

**C.**  **The bankruptcy court erred when it denied the Trustee's reconsideration motion.**

Based on the above, we also conclude that the bankruptcy

22

court erred in denying the Trustee's reconsideration motion.[17]

**CONCLUSION**

The bankruptcy court denied the Trustee's motion because it thought that it lacked the authority to compel a debtor to sign a consent directive. This was legal error; bankruptcy courts have that power. This conclusion, however, does not mean that the bankruptcy court must compel Mastro to do so. Accordingly, we REVERSE the bankruptcy court's order and REMAND for further proceedings consistent with this opinion.

---

[17] Whether an order denying a Rule 2004 examination is a final order is unclear. Lynch v. Malloy (In re Lynch), 544 B.R. 444, 448 (10th Cir. BAP 2016) ("Appellate courts have reached different conclusions on whether an order for a Rule 2004 examination is a discrete dispute that sufficiently concludes a 'proceeding.' ") (gathering cases). So a case-by-case analysis is warranted. Cf. id. at 449. Here, at the hearing, the bankruptcy court suggested the order was interlocutory: it invited the Trustee to submit additional authority and indicated that it might reconsider the ruling.

The Trustee submitted additional authority with his reconsideration motion; the bankruptcy court, however, interpreted and denied the motion as a Civil Rule 59(e) motion. But courts "have inherent power to modify their interlocutory orders before entering a final judgment." Balla v. Idaho State Bd. of Corr., 869 F.2d 461, 465 (9th Cir. 1989). So, to the extent the order was interlocutory, the bankruptcy court erred when it applied Civil Rule 59(e). Cf. Balla, 869 F.2d at 466 ("Rule 59(e) clearly contemplates entry of judgment as a predicate to any motion." (internal quotation marks omitted)).