

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re:<br>RS AIR, LLC,<br><div align="center">Debtor.</div> | BAP No. NC-23-1008-FSG<br><br>Bk. No. 20-51604 |
| RS AIR, LLC; REARDEN LLC; STEPHEN G. PERLMAN, individually and as trustee of the First Amendment and Complete Restatement of the Stephen G. Perlman Revocable Trust by Declaration of Trust dated February 12, 2004,<br><div align="center">Appellants,</div><br>v.<br>NETJETS AVIATION, INC.; NETJETS SALES, INC.; NETJETS SERVICES, INC.,<br><div align="center">Appellees.</div> | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Northern District of California
M. Elaine Hammond, Bankruptcy Judge, Presiding

APPEARANCES:

Jennifer C. Hayes of Finestone Hayes LLP argued for appellant RS Air, LLC; Jeffrey L. Fillerup of Rincon Law, LLP argued for appellant Stephen G. Perlman; Kelly Singer of Squire Patton Boggs (US) LLP argued for appellees.

Before: FARIS, SPRAKER, and GAN, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

Once a debtor receives a bankruptcy discharge, § 524(a)[1] precludes a creditor from enforcing a prepetition debt as a personal liability of the discharged debtor. The discharge injunction does not, however, extinguish the debt or protect any other entity from its liability on that debt. After chapter 11 debtor RS Air, LLC received its discharge, creditors sued to collect a discharged debt from RS Air's alleged alter egos. RS Air claims that this was a violation of the discharge injunction. We agree with the bankruptcy court that the creditors did not violate the discharge injunction. We therefore AFFIRM.

We publish to confirm that the discharge injunction does not protect a debtor's alter egos.

## FACTS

### A.    Prepetition events

RS Air is a Delaware limited liability company. Appellant Stephen G. Perlman is its founder and sole managing member. Its stated purpose was to provide aircraft transportation services to Mr. Perlman.

Mr. Perlman is trustee of the First Amendment and Complete Restatement of the Stephen G. Perlman Trust by Declaration of Trust dated

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

February 12, 2004 (the "Perlman Trust"). He also allegedly owns and controls appellant Rearden LLC.

Appellees NetJets Aviation, Inc., NetJets Sales, Inc., and NetJets Services, Inc. (collectively, "NetJets") are in the business of selling and leasing fractional interests in private jets. RS Air purchased a 6.25% interest in two aircraft from NetJets and entered into multiple management agreements with NetJets regarding the aircraft.

NetJets filed a complaint in Ohio against RS Air for breach of certain agreements and refusal to pay certain fees and return title to the aircraft to NetJets. RS Air counterclaimed for breach of contract and fraud.

## B. The chapter 11 case

In November 2020, just before trial in Ohio was set to commence, RS Air filed a bankruptcy petition under subchapter V of chapter 11.

NetJets filed a proof of claim for approximately $2.133 million. It also filed a motion to dismiss the chapter 11 case, as well as an objection to RS Air's designation as a subchapter V small business debtor. These efforts were unsuccessful.[2]

NetJets filed a motion requesting standing to pursue claims against Mr. Perlman, the Perlman Trust, and Rearden (collectively, the "Perlman

---

[2] NetJets also filed a motion for relief from the automatic stay to pursue the Ohio litigation and to apply setoff. The bankruptcy court did not grant stay relief as to the Ohio litigation but granted stay relief to allow NetJets to setoff monies owed to RS Air against its claim. We affirmed. *RS Air, LLC v. NetJets Sales, Inc. (In re RS Air, LLC)*, BAP No. NC-21-1080-TBG, 2022 WL 1288463 (9th Cir. BAP Apr. 26, 2022).

Parties") as alter egos of RS Air, or, alternatively, to dismiss the bankruptcy case. It argued that RS Air and the Perlman Parties "operated as [a] single economic unit to the detriment of creditors" such that the court should pierce the corporate veil.

The bankruptcy court denied NetJets' motion for standing. It examined both Delaware and Ninth Circuit law and concluded that NetJets failed to allege facts in the proposed complaint that would allow NetJets to pierce the corporate veil. NetJets appealed to the BAP.

In the meantime, the bankruptcy court confirmed RS Air's third amended plan. The plan entitled NetJets to receive, at minimum, a pro-rata distribution from a $100,000 contribution by Mr. Perlman. NetJets appealed the confirmation order to the BAP. We affirmed the bankruptcy court's confirmation order and its order denying NetJets' objection to RS Air's subchapter V election. *NetJets Aviation, Inc. v. RS Air, LLC (In re RS Air, LLC)*, 638 B.R. 403 (9th Cir. BAP 2022).

In a separate decision, we vacated the bankruptcy court's order denying NetJets' motion for standing to pursue alter ego claims. *NetJets Sales, Inc. v. RS Air, LLC (In re RS Air, LLC)*, BAP No. NC-21-1102-GTB, 2022 WL 1284012 (9th Cir. BAP Apr. 26, 2022). We held that the bankruptcy court erred in its application of the colorability standard when deciding whether NetJets could assert a veil-piercing claim under Delaware law.[3]

---

[3] We stated, however, that, "even if the estate has exclusive standing to pierce its corporate veil [during the bankruptcy]," that exclusivity "will terminate upon the

We remanded the matter to the bankruptcy court.

## C.     The alter ego Ohio litigation

Prior to the bankruptcy court entering RS Air's discharge, NetJets filed a new complaint (the "Ohio Complaint") against Mr. Perlman (individually and as trustee of the Perlman Trust) and Rearden in the United States District Court for the Southern District of Ohio. The Ohio Complaint did not name RS Air as a defendant but included allegations that RS Air was "conclusively liable" to NetJets on the underlying debt. It contained a single cause of action for a judgment declaring that the Perlman Parties are alter egos of RS Air and are liable to NetJets for $1,767,571.15.

RS Air received its discharge shortly thereafter. Although the standard discharge order does not identify the creditors whose claims are discharged, RS Air's discharge order provided for a discharge of all debts "including, but not limited to, the debt evidenced by the proof of claim filed by NetJets Aviation, Inc., NetJets Sales, Inc., and NetJets Services, Inc. as Claim No. 1 . . . ."

The Perlman Parties filed motions to dismiss the Ohio Complaint. The Ohio district court found that there was no alter ego liability as to Reardon but denied the motion as to Mr. Perlman and the Perlman Trust.

---

confirmation order becoming effective." 2022 WL 1284012 at *1 n.2. We further stated that, "[u]pon the confirmation order becoming effective, any right of the estate to assert a veil-piercing action will terminate." *Id.* at *1 n.3.

## D. The motion for contempt

Meanwhile, RS Air and the Perlman Parties (collectively, the "RS Air Parties") filed a motion for contempt ("Contempt Motion") against NetJets for violation of the discharge injunction under § 524(a)(2).

They argued that the Ohio Complaint's alter ego claim impermissibly sought to recover a discharged debt because the alter ego allegation meant that "the Defendants are all one and the same."

NetJets opposed the Contempt Motion. It argued that the BAP had stated that the discharge injunction did not preclude the Ohio Complaint. It also contended that the discharge injunction does not apply to non-debtors and that RS Air's discharge could not discharge the alter ego claims against the Perlman Parties in the Ohio Complaint.

After a hearing, the bankruptcy court issued its order denying the Contempt Motion. It analyzed whether "(1) NetJets knew RS Air's Discharge injunction applied, and (2) NetJets intended the actions that violated the Discharge."

The bankruptcy court quickly disposed of the second question, holding that NetJets intended its actions because the filing of the Ohio Complaint seeking recovery on its claim was an intentional act.

As to the first question, the bankruptcy court concluded that there was a "fair ground of doubt" whether the discharge injunction applied to the Ohio Complaint. The bankruptcy court favored NetJets' argument that § 524(e) expressly provides that the discharge injunction does not apply to

6

the liabilities of "any other entity," including the Perlman Parties. It held that, because the Ohio Complaint did not name RS Air as a defendant, NetJets had an objectively reasonable basis to determine that the discharge applied only to RS Air and that it did not violate the discharge injunction as to the Perlman Parties.

## E.     The motion for clarification

The RS Air Parties filed a motion for clarification and reconsideration of the contempt order ("Clarification Motion"). They said that, although the bankruptcy court held that NetJets had not committed contempt, the court did not answer the threshold question of whether NetJets had violated the discharge injunction as to RS Air.

RS Air acknowledged that it was not named personally in the Ohio Complaint but argued that the bankruptcy court's ruling potentially allowed NetJets to add RS Air to a judgment against the Pearlman Parties under California Code of Civil Procedure ("CCP") § 187. RS Air argued that this threat constituted a violation of the discharge injunction.[4]

The bankruptcy court agreed that it should have expressly decided whether NetJets had violated the discharge injunction. It clarified its ruling and determined that NetJets did not violate the discharge injunction.

The court concluded that the Ohio Complaint "does not seek relief against RS Air," so the alter ego allegations did not violate the discharge

---

[4] Counsel later conceded that CCP § 187 only applies if an Ohio judgment for NetJets is domesticated in California.

7

injunction as to RS Air. However, it cautioned that, "[s]hould NetJets . . . act to collect or recover any debt of RS Air as a personal liability, then NetJets will violate the discharge. . . . [T]hus far NetJets has not acted in violation of Section 524(a)(2) and, as such, no violation of RS Air's discharge has occurred."

The bankruptcy court entered an order reiterating its denial of the Contempt Motion. The RS Air Parties timely appealed both orders.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in holding that the alter ego allegations in NetJets' Ohio Complaint did not violate the discharge injunction.

## STANDARDS OF REVIEW

"The scope of the bankruptcy discharge injunction is a mixed question of law and fact to be reviewed either de novo or for clear error, depending upon whether questions of law or questions of fact predominate." *Reed v. Nielsen (In re Reed)*, 640 B.R. 932, 938 (9th Cir. BAP 2022) (citation omitted), *aff'd in part, appeal dismissed in part*, No. 22-60021, 2023 WL 1879516 (9th Cir. Feb. 10, 2023). In this case, the facts are uncontroverted and questions of law predominate, so our review is de novo. Similarly, we review de novo the bankruptcy court's statutory

interpretation of § 524(a). *Id.*

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review for an abuse of discretion the denial of sanctions for an alleged violation of the discharge injunction, *see In re Reed*, 640 B.R. at 938, and the ruling on a motion for relief under Civil Rule 59 or Civil Rule 60 (made applicable in bankruptcy cases by Rules 9023 and 9024), *see Rigby v. Mastro (In re Mastro)*, 585 B.R. 587, 591 (9th Cir. BAP 2018). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 (9th Cir. 2009) (en banc).

**DISCUSSION**

**A.    The discharge injunction precludes any act to recover a debt as a personal liability of the debtor.**

This appeal hinges on the effect of RS Air's discharge under § 524. Our analysis begins with the statutory language. If that language is plain, our analysis also ends there. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole

9

function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (cleaned up)); *Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1121 (9th Cir. 2011) ("Our analysis begins, as it must, with the text of the statute in question. Under the 'plain meaning' rule, where the language of a statute is plain and admits of no more than one meaning the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." (cleaned up)).

By the plain terms of the statute, the discharge only protects the debtor from personal liability. The discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" § 524(a)(2). Similarly, the discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor" with respect to a discharged debt. § 524(a)(1).

The statute also plainly provides that the discharge only protects the debtor and not any other person who is liable with the debtor. Subject to an exception not applicable here, the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." § 524(e).

**B. The bankruptcy court correctly held that NetJets' alter ego allegations did not violate the discharge injunction.**

**1. The alter ego allegations did not concern RS Air's "personal liability."**

Following the plain language of the statute, we have repeatedly emphasized that the discharge only affects the debtor's "personal liability." *See, e.g., In re Reed*, 640 B.R. at 939 ("But the discharge only affects the debtor's 'personal liability.'"); *Mellem v. Mellem (In re Mellem)*, 625 B.R. 172, 182 (9th Cir. BAP 2021) ("[T]he extent [of] the discharge is limited to **'personal liability of the debtor.'**"), *aff'd*, No. 21-60020, 2021 WL 5542226 (9th Cir. Nov. 26, 2021); *Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 550 (9th Cir. BAP 2002) ("[T]he assumption . . . that a bankruptcy court order is required any time an action is taken nominally against a debtor after discharge is also incorrect. The § 524(a)(2) discharge injunction prohibits only actions to recover a debt as a personal liability of the debtor. Where the purpose of the action is to collect from a collateral source, such as insurance . . . , and the plaintiff makes it clear that it is not naming the debtor as a party for anything other than formal reasons, no bankruptcy court order is necessary.").

Here, there is no dispute that the Ohio Complaint does not name RS Air as a defendant and does not seek any relief against RS Air. It repeatedly mentions RS Air's liability but only seeks to hold the non-debtor Perlman Parties liable for RS Air's debt. Neither § 524(a)(1) nor (a)(2) prohibits this.

11

At oral argument, counsel for RS Air and Mr. Perlman conceded that RS Air was not named as a party in the Ohio Complaint but argued that merely requiring RS Air to participate in discovery for that litigation violated the discharge injunction. But the discharge injunction only enjoins personal collection of a discharged debt and does not relieve a discharged debtor from all forms of imposition or inconvenience. We have repeatedly held that a discharged debtor's obligation to participate in discovery is not an effort to personally collect a debt and does not violate the discharge injunction. *See, e.g., Groner v. Miller (In re Miller)*, 262 B.R. 499, 506 (9th Cir. BAP 2001) ("Section 524(a)(2) provides that a debtor's discharge operates as an injunction 'against the commencement or continuation of an action [or] the employment of process' to collect a discharged debt. Judicial interpretations of this section indicate that calling a debtor to testify does not violate the injunction against 'employment of process.'"); *Patronite v. Beeney (In re Beeney)*, 142 B.R. 360, 363 (9th Cir. BAP 1992) (holding that the proposed litigation did not violate the discharge injunction because "allowing [creditor's] suit to proceed merely leaves [debtor] in the position of a witness who would appear at trial"); *see also In re Traylor*, 94 B.R. 292, 293 (Bankr. E.D.N.Y. 1989) (Where the creditors "are not seeking any recovery from the debtor himself[,]" "the debtor, whether discharged or not, is under the same obligations as would be any witness, regardless of the inconvenience to him, to attend any trial that may take place if the relief is granted.").

Moreover, § 524(e) explicitly provides that the discharge injunction "does not affect the liability of any other entity on" the discharged debt. The Ninth Circuit employs an especially strict reading of § 524(e): "This court has repeatedly held, without exception, that § 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors." *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F. 3d 1394, 1401 (9th Cir. 1995); *see Blixseth v. Credit Suisse*, 961 F. 3d 1074, 1082 (9th Cir. 2020) ("We have interpreted the section generally to prohibit a bankruptcy court from discharging the debt of a non-debtor."); *In re Beeney*, 142 B.R. at 362 ("Subsection (a) enjoins creditors from attempting to collect from the debtor or the debtor's assets debts that have been discharged in bankruptcy. Subsection (e) makes clear that this injunction applies only to the debtor's personal liability and does not inhibit collection efforts against other entities.").[5]

---

[5] At oral argument, counsel for Mr. Perlman argued that § 524(e) was inapplicable because the Ohio Complaint was seeking to hold RS Air liable not as "any other entity," but as an entity that is one and the same as the Perlman Parties. We disagree. The parties have previously agreed that Delaware law controls the alter ego analysis. *See In re RS Air, LLC*, 2022 WL 1284012, at *3 (stating that "[t]he parties also agree that because Debtor is a Delaware LLC, Delaware law governs" and examining "veil-piercing claims" under Delaware law). Although the alter ego doctrine requires a showing that the two entities "operated as a single economic entity," *Official Unsecured Creditors' Comm. of Broadstripe, LLC v. Highland Cap. Mgmt., L.P. (In re Broadstripe, LLC)*, 444 B.R. 51, 102 (Bankr. D. Del. 2010), the result is not to deem the entities the same, but to hold one liable for the other's debts, *see Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 469 (D. Del. 2010) ("[T]he corporate veil can be pierced, as a tool of equity, to disregard the existence of a corporation and impose liability on the corporation's individual principals and their personal assets. The alter ego doctrine for piercing the

13

We asked RS Air's counsel at oral argument if NetJets could avoid a discharge violation by amending its complaint. Counsel responded that NetJets would have to allege that RS Air's debt to NetJets is "zero dollars." This reveals a fundamental flaw in the RS Air Parties' position: the discharge does not extinguish the debt; instead, it protects only the debtor from personal liability on that debt. As the Ninth Circuit stated:

> That § 524(e) confines the debt that may be discharged to the "debt of the debtor"—and not the obligations of third parties for that debt—conforms to the basic fact that a discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability. . . . The debt still exists, however, and can be collected from any other entity that may be liable.

*Blixseth*, 961 F.3d at 1082 (cleaned up); *see also id.* at 1083 (stating that the discharge injunction "does not, however, absolve a non-debtor's liabilities for that *same* 'such' debt"). RS Air continues to owe the full amount of the debt; the discharge injunction precludes collection of that debt from RS Air, but not from anyone else.

Relying on the legislative history of § 524, the RS Air Parties argue that § 524(e) applies only to co-obligors or guarantors, i.e., "parties legally bound by contract on a discharged debt[.]" But we turn to legislative history only when the statutory language is ambiguous. *See Transwestern*

---

corporate veil allows derivative liability to be placed upon a corporation's individuals." (citations omitted)).

*Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cnty.*, 627 F.3d 1268, 1271 (9th Cir. 2010) ("If the plain meaning of the statute is unambiguous, that meaning is controlling and we need not examine legislative history as an aid to interpretation unless the legislative history clearly indicates that Congress meant something other than what it said." (citation omitted)). Section 524(a) and (e) are not ambiguous.

Even if we considered the legislative history, we would reject this argument. While it is true that the legislative history mentions co-obligors and guarantors, there is no reason to think that Congress intended to limit the broad sweep of § 524(e) to those examples. The statute speaks broadly of "the liability of any other entity[.]" If Congress had intended the result that the RS Air Parties favor, it would have said, "the liability of any other entity that is legally bound by contract on a discharged debt." We may not interpolate that phrase into the plain statutory language; instead, we must assume that Congress meant exactly what it said.

At oral argument, counsel for RS Air predicted that the bankruptcy court's decision would open the floodgates to post-discharge litigation on prepetition alter ego claims, particularly concerning single-member LLCs. We do not foresee such a result. The corporate veil is a formidable obstacle, and parties that file baseless alter ego claims risk sanctions for frivolous filings.

## 2. The cases cited by the RS Air Parties are unpersuasive.

The RS Air Parties primarily rely on three cases: *Yan v. Lombard Flats,*

15

*LLC (In re Lombard Flats, LLC)*, Case No. 15-cv-00870-PJH, 2016 WL 1161593 (N.D. Cal. Mar. 23, 2016), *In re Ostrander*, Case No. 11-33801, 2022 WL 999680 (Bankr. N.D. Ohio Apr. 1, 2022), and *In re Torres*, 594 B.R. 890 (Bankr. C.D. Cal. 2018). *Lombard Flats* and *Ostrander* are distinguishable, and we think that *Torres* was incorrectly decided.

In *Lombard Flats*, Martin Eng transferred real property to his LLC. Later, the LLC filed a chapter 11 petition, successfully completed its reorganization plan, and received its discharge. 2016 WL 1161593, at *1.

The creditors sued the LLC and Mr. Eng to recover on four promissory notes made by Mr. Eng. The complaint alleged that the LLC was liable for Mr. Eng's debts because the LLC was Mr. Eng's alter ego. *Id.* at *3.

The LLC filed a motion for contempt against the creditors' attorney for violation of the discharge injunction. The bankruptcy court agreed that the attorney had violated the discharge injunction. The district court affirmed, holding that the alter ego claim against the LLC was a "claim" under bankruptcy law. *Id.* at *6. It stated that "Section 524(a)(1) provides that any judgment on a debt that is discharged is void as a determination of the debtor's personal liability. . . . Characterizing the alter ego theory as a 'judgment collection remedy,' rather than a claim for substantive relief, does not escape enforcement of the discharge." *Id.* (citation omitted).

*Lombard Flats* is not applicable because the creditor sought to collect a debt from the LLC even though the LLC had received its discharge in

16

bankruptcy. This plainly violated § 524(a). In this case, however, NetJets is doing the opposite: it has a claim against discharged debtor RS Air, but it is seeking to collect the debt from the Perlman Parties, who are not protected by the discharge. *Lombard Flats* says nothing about a creditor's ability to collect a debt (owed by a discharged debtor) from a non-debtor.

The RS Air Parties argue that *Lombard Flats* "held that mere alter ego allegations against the debtor violated the discharge injunction." They contend that "the collection target is irrelevant[,]" such that an allegation involving the debtor violates the discharge injunction. The RS Air Parties are wrong. The district court in *Lombard Flats* said no such thing. To the contrary, the district court made clear that the complaint sought to hold the debtor liable for the discharged debt: the creditors "sought to hold debtor liable on [Mr.] Eng's debts as [Mr.] Eng's alter ego." *Id.* at *3.

In *Ostrander*, a creditor had claims against an individual debtor, Bonnie Ostrander, and two companies she controlled. After Ms. Ostrander received a chapter 7 discharge, the creditor filed a state court complaint to collect its claims. Ms. Ostrander asked the bankruptcy court to hold the creditor in contempt for violating the discharge.

The bankruptcy court exhaustively analyzed the complaint (which it described as "a mess"). 2022 WL 999680 at *28. The court held that many of the causes of action in the complaint did not violate the discharge injunction because they stated claims only against the companies, not Ms. Ostrander. *Id.* at *13.

17

But the court also found that some of the causes of action seemed to assert discharged claims against Ms. Ostrander. For example, one of the causes of action alleged that Ms. Ostrander's corporations were her alter egos and sought to hold her and others "personally liable for the entities['] acts . . . ." *Id.* at *25. The court concluded that the overall effect of the complaint was a violation. Because the confusing drafting of the complaint made it difficult to separate the permissible and impermissible claims, Ms. Ostrander did not have counsel to assist her with that task, and the companies had no known assets, "the practical, objective effect of the complaint overall is to coerce and pressure [Ms.] Ostrander to repay discharged debts." *Id.* at *30.

We need not opine on the *Ostrander* court's reliance on the overall effect of the complaint, because the facts on which the *Ostrander* court relied are not present in this case. NetJets' Ohio Complaint is clearly drafted and carefully avoids asserting discharged claims. The RS Air Parties have defended themselves aggressively with the assistance of able counsel. There is no reason to think that NetJets is trying to slip a discharged claim by the Ohio court and no discernible risk that it would succeed if it tried.

In *Torres*, Katherine Torres personally guaranteed the loan made to her wholly-owned business. 594 B.R. at 891-92. The creditor sued Ms. Torres and her business, alleging that she was an alter ego of the business. *Id.* at 892. Shortly thereafter, Ms. Torres and her husband filed a

18

chapter 7 petition and received a discharge. *Id.* at 893.

The creditor resumed prosecution of the state court complaint against the business but voluntarily dismissed Ms. Torres without prejudice. The creditor did not dismiss or amend the alter ego allegation and moved for an entry of default against the business. *Id.* at 894.

Ms. Torres moved for sanctions against the creditor for a discharge violation. The bankruptcy court acknowledged that the creditor was proceeding only against the business but was concerned by the alter ego allegations in the complaint. *Id.* It noted that California courts have held that, under CCP § 187, a court may amend a judgment against a defendant by adding the defendant's alter egos as judgment debtors. The court stated that "the matter is not entirely free from doubt," but concluded that "the most likely outcome is that in the normal course of events, and without any intervention by this Court based upon the discharge injunction, [the creditor] would be successful in adding Ms. Torres to a default judgment obtained against [the business] under the authority of [CCP] § 187." *Id.* at 896.

> The bankruptcy court relied on *Lombard Flats*. It said that it
>
> stands for the proposition that if *A* receives a bankruptcy discharge, an action against *B* alleging that *A* and *B* are alter egos violates the discharge injunction if it is shown that the alter ego claim is a prepetition claim. Thus, [*Lombard Flats*] indicates that not only is the continuation of the State Court Action against Ms. Torres (recipient of the discharge) a violation of the discharge injunction but also that the State

Court Action's continuation against [the business] likewise violates the discharge injunction as long as the alter ego allegations remain in the Complaint.

*Id.* at 896-97. Ultimately, however, the court declined to sanction the creditor because he did not know that the discharge injunction applied to the state court action.

We respectfully disagree with *Torres*. First, the *Torres* court misread *Lombard Flats*. *Lombard Flats* did not hold that, if the debtor receives a discharge, any action against the principal alleging that the debtor and its principal are alter egos violates the discharge injunction. Rather, it held that an action to recover a debt against the **discharged debtor** violates the discharge injunction.

Second, we do not agree that a discharge violation exists whenever a creditor might later seek a judgment against the discharged debtor. If *Torres* is right, the discharge protects non-debtor parties whenever CCP § 187 or a similar statute or doctrine might apply. This would gut § 524(e), since no one could ever rule out the possibility that a creditor might violate the discharge in the future. Further, it is unnecessary because a creditor's later attempt to add the discharged debtor to a judgment would unquestionably violate the discharge injunction.

There is no fair ground of doubt that NetJets would violate the discharge injunction if it sought a judgment against RS Air under CCP § 187 or on any other basis. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1804

20

(2019) ("A court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order."). We will not protect the Perlman Parties from liability based on an assumption that NetJets will commit an obvious contempt.

## CONCLUSION

The bankruptcy court did not err in denying the Contempt Motion and deciding the Clarification Motion. We AFFIRM.